UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

COURTNEY SANDOZ                          CIVIL ACTION NO. 07-1308

VERSUS                                   JUDGE DOHERTY

CINGULAR WIRELESS, LLC,                  MAGISTRATE JUDGE HANNA
AT&T MOBILITY, LLC,
CINGULAR WIRELESS
EMPLOYEE SERVICES, LLC

*REPORT AND RECOMMENDATION*
(Rec. Doc. 67)

This matter is before the undersigned for a report and recommendation on

Plaintiff's Motion for Conditional Class Certification (Resubmitted).  The motion is

opposed.

*Factual and Procedural Background*

Courtney Sandoz worked for defendants as a part-time retail sales consultant in

Lafayette, Louisiana, from October 10, 2004, until she voluntarily resigned on October 5,

2005.  Plaintiff filed this action in Lafayette Parish state court on or about April 23, 2007,

individually and as an opt-in collective action under the Fair Labor Standards Act, 29

U.S.C. § 216(b), essentially arguing that Cingular's payment policy for part-time workers

violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206.  Plaintiff asserts

defendants are "liable to Plaintiff and similarly situated part time Retail Sales Consultants

for penalties and liquidated damages in an amount equal to and in addition to the late paid

minimum wages" and "for the plaintiffs' reasonable attorneys fees and expenses, pre

1

judgment and post judgment interest on the award, costs and for all other legal, or equitable relief which this Court may deem appropriate."[1]

Plaintiff alleges she was a part-time retail worker for Cingular, and she worked and was paid for a minimum of 19 hours per week at a rate of pay in excess of the minimum wage.  However, plaintiff also worked extra hours, called "exception time."  According to plaintiff's Petition, "Although Exception Time was entered on an employee time sheet in the scheduled hours section, Defendant's policy was to not pay any wages for Exception Time in the next pay check if the store manager failed to verify the hours worked in a separate time entry report."[2]

The policy and procedure for payment of exception time is more particularly described by defendants, and cited by plaintiffs, as follows:

> During the Relevant Period, hourly employees were required to record their work hours on timesheets provided by Defendants, and to turn those timesheets in to their store managers on or before the second Saturday at the end of their two week pay period.  The store manager was required to verify the time and enter it into the web based time entry system before 10:00 a.m. CT on the following Monday.  All time entered into the system by 10:00 a.m. CT on the Monday following the end of the pay period was paid with the regular pay cycle on the following Friday.  If no timesheet was submitted by the time entry deadline, the employee was paid the regular time.[3]

Plaintiff alleges this policy caused her to be paid in arrears for her exception time

---

[1] *Petition* (Rec. Doc. 1-1), ¶¶ 11, 14.

[2] *Ibid.*, ¶ 7.

[3] *Memorandum in Support of Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34-1), p. 4, citing *Defendant's Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction* (rec. doc. 17), p. 3.

hours worked on several occasions. As a result, she was paid an amount below minimum wage for the actual hours worked during the pay periods in which her exception time was not paid concurrently with her payment for her regular 19 hours.  Plaintiff argues that Cingular's conceded practice was "to pay the 'default' 19 regular hours and roll over pay for excess hours to later pay periods whenever a store manager missed the 10:00 a.m. Monday deadline for entering actual work time on the computer."[4]  Plaintiff cites defendant's analysis of her below minimum wage pay periods at follows:

> Defendant's analysis compared minimum wage for all hours worked with the amount paid, and showed a minimum wage deficiency for weeks ending October 23, 2004 (effective regular rate $2.00/hour, deficiency $125.84), October 30, 2004 (effective regular rate $2.72/hour, deficiency $97.38), November 13, 2004 (effective regular rate $3.91/hour, deficiency $49.75), and March 26, 2005 (effective regular rate $3.93/hour, deficiency $48.00).[5]

After plaintiff's Petition was removed to federal court, defendants almost immediately made an offer of judgment to plaintiff in the amount of one-thousand dollars ($1000.00), and argued the offer of judgment mooted Sandoz's claim, thus depriving the court of subject matter jurisdiction.  The defendants' motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(1) for lack of subject matter jurisdiction was denied.[6]  Defendants filed a Motion to Certify the Court's Order for Interlocutory Appeal and to Stay

---

[4]*Memorandum in Support of Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34-1), p. 5.

[5]*Ibid.*, referencing Cingular's Offer of Judgment and Time Records (Rec. Doc. 17-19, 17-20, 17-21, 17-22).

[6]*Memorandum Ruling* (rec. doc. 28).

3

Proceedings.[7]  On June 5, 2008, plaintiff filed a Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members[8] and an opposition to defendants' motion to certify the court's order for interlocutory appeal and to stay.[9]  On June 10, 2008, the court certified the Memorandum Ruling denying defendants' motion to dismiss for interlocutory appeal, but deferred ruling on the motion to stay.

Briefing on the plaintiff's motion for class certification continued until the Fifth Circuit granted the Petition for Leave for Appeal from an Interlocutory Order, and on September 9, 2008, stayed the district court proceedings pending expedited appeal.[10]  On January 14, 2009, the Fifth Circuit issued a judgment vacating the judgment of this court denying the motion to dismiss, and remanding the matter "for a consideration of the timeliness and, if necessary, the merits of Sandoz's motion to certify."[11]

Plaintiff subsequently filed a Motion for Hearing on Motion for Class Certification,[12] addressing the issue of timeliness in accordance with the remand order of the Fifth Circuit.  After briefing and a report from the Magistrate Judge, the court held the

---

[7]*Motion to Certify the Court's Order for Interlocutory Appeal and to Stay Proceedings* (rec. doc. 31).

[8]*Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34).

[9]*Plaintiff's Opposition to Defendants' Motion to Certify Interlocutory Appeal and for Stay* (rec. doc. 35).

[10]*Orders granting Petition for Interlocutory Appeal and Motion to Stay* (rec. docs. 58 and 59).

[11]*Judgment* (rec. doc. 62).

[12]*Plaintiff's Motion for Hearing on Motion for Class Certification* (rec. doc. 60).

plaintiff's motion for class certification was timely filed, and that plaintiff could refile her motion for certification on the merits.[13]

Plaintiff refiled her motion for conditional class certification, incorporating argument from her first motion for class certification, which is now before the undersigned for report and recommendation.[14]

### Argument of Parties

Plaintiff argues the court should provisionally certify the action as a collective or representative action, consisting of two classes, as follows:

Class I            (Minimum Wage Violations)

All persons who were employed by Cingular as a part time Retail Sales Consultant at any time from and after April 23, 2004 and who were scheduled to work more than thirty-four (34) hours in any week.

Class II            (Record Keeping Violations)

All persons who were employed by Cingular as a part time Retail Sales Consultant at any time from and after April 23, 2004.[15]

In support of her motion for provisional certification for the minimum wage violations, plaintiff argues "it is undisputed that application of the policy resulted in

---

[13]*Judgment* (rec. doc. 70).

[14]*Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. docs. 34, 67).

[15]*Memorandum in Support of Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34-1), pgs. 3, 4.

minimum wage violations,"[16] and that because the policy was companywide, "it would be reasonable to conclude that the employer engaged in the same practices with other employees."[17]

Regarding provisional certification for the notice violations, plaintiff argues all members of the prospective class, as part-time employees, were adversely affected by Cingular's failure to "make available to employees sufficient information to permit a 'ready calculation' of the work hours for which they are being paid currently, *e.g.* which hours worked in the immediate past pay period were rolled over to subsequent work weeks and will be paid late, and which paid hours in the current check were rolled over from previous work weeks and are being paid late."[18]  Plaintiff argues Cingular failed to provide the payroll information to Sandoz until the lawsuit was filed, in violation of FLSA, and Cingular violated 29 C.F.R. § 516.2(a), as follows:

> In each instance where Exception Time was rolled over to a subsequent pay period, the employees' next pay check stub would not explain the actual basis for the amount paid as required by 29 C.F.R. §516.2(a)(6), nor the effective weekly straight-time wage rate for hours covered by the pay period as required by §516.2(a)(8), nor the basis and amount of individual deductions for Exception Time rolled over to a subsequent pay period as required by §516.2(a)(10).  Additionally, any paycheck which contained late payment of Exception Time rolled over from a previous pay period would fail to describe the separate pay period(s) covered by the payment, as

---

[16]*Supplemental Memorandum in Support of Motion for Conditional Class Certification* (Rec. Doc. 67-1), p. 6.

[17]*Memorandum in Support of Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34-1), p. 5, citing Lima v. International Catastrophe Solutions, Inc., 493 F.Supp.2d 793, 800 (E.D.La.2007).

[18]*Ibid.*, p. 6.

required by 29 C.F.R. §516.2(a)(12).[19]

Plaintiff further states that upon information and belief, the pay practices complained of have ceased due to plaintiff's investigation and litigation, and plaintiff is entitled to prevailing party status, "if she establishes that one of the primary goals of the lawsuit was achieved, and that the suit itself caused the defendant to remedy the complained of conditions."[20]   As a prevailing party, plaintiff argues, she is entitled to provisional certification of the class so class members may opt-in and "file proofs of claim for liquidated damages in the amount of late paid minimum wages, and for attorneys fees based on class wide relief."[21]

In opposition, defendants argue their exception time payment policy did not violate the FLSA, plaintiff has failed to establish the existence of any similarly situated individuals, and there are too many individualized factors to afford class treatment. Finally, the claims of any similarly situated individuals are barred by the applicable statute of limitations.

Defendants argue the exception time pay policy did not violate the FLSA because the calculations used by plaintiff, which only show a wage loss of $123.44, omit plaintiff's sales commissions, which result in a wage rate well above the minimum rate. Furthermore, any violation of the FLSA was not the result of a policy by defendants, but

---

[19]*Memorandum in Support of Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34-1), p. 7.

[20]*Ibid.*, p. 10 (citations omitted).

[21]*Ibid.*

the result of plaintiff's failure to timely submit her exception time hours by the deadline for inclusion in the next pay period.  Moreover, if the deadline was missed, it was Cingular's procedure that an employee could request a supplemental pay check for exception time worked but not included in the regular pay cycle.  It was Cingular's policy to include exception time in the pay period in which it was reported, instead of actually earned, in two circumstances: (1) where an employee failed to submit her exception time by the deadline, or (2) a store manager failed to verify and submit exception time by the deadline and the employee failed to request a supplemental pay check.

In addition, defendant argues Cingular installed a new payroll system, KRONOS, company wide by January, 2006.  KRONOS records employee time in "real time," and eliminates paper timesheets and the delay caused when those timesheets were not submitted timely.  Therefore, any potential claims ended in January, 2006.  Defendants cite authority for the argument that the two or three year limitations period under the FLSA, 29 U.S.C. § 255(a), continues to run against absent members of the Section 216(b) opt-in collective action, and tolling of the statute of limitations under Rule 23 is inapplicable in FLSA class actions.[22]

### Applicable Law and Discussion

The Court stated in its ruling on May 13, 2008, that plaintiff's ability to maintain a Section 216(b) collective action would be analyzed under the "two-stage approach,"

---

[22]*Defendants' Opposition to Plaintiff's Motion for Conditional Certification of Collective Action* (rec. doc. 48), p. 19, citing Atkins v. General Motors Corp., 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983); Groshek v. Babcock and Wilcox Tubular Products Division, 425 F.Supp. 232, 234 (E.D. Wis. 1977).

which was initially articulated in <u>Lusardi v. Xerox Corp.</u>, 118 F.R.D. 351 (D.N.J. 1987).[23]

Under §216(b), "an employee may bring an action against his employer for himself and

those of his fellow employees who are similarly situated." <u>Lusardi</u>, at 358. The "two-

stage" analysis contemplates a "conditional certification" of the class in the first stage

based on limited information, and at the second stage, after appropriate discovery,

evaluating whether the conditional class should be decertified based on the lack of

"similarly situated" class members.

In <u>Mooney v. Aramco Services Co.</u>, 54 F.3d 1207 (5th Cir. 1995), *abrogated on*

*other grounds* in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), the Fifth Circuit

articulated the <u>Lusardi</u> analysis as follows:

> Under Lusardi, the trial court approaches the "similarly situated" inquiry
> via a two-step analysis. The first determination is made at the so-called
> "notice stage." At the notice stage, the district court makes a
> decision-usually based only on the pleadings and any affidavits which have
> been submitted-whether notice of the action should be given to potential
> class members.
>
> Because the court has minimal evidence, this determination is made using a
> fairly lenient standard, and typically results in "conditional certification" of
> a representative class. If the district court "conditionally certifies" the class,
> putative class members are given notice and the opportunity to "opt-in."
> The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for
> "decertification" by the defendant usually filed after discovery is largely

---

[23]*Memorandum Ruling* (rec. doc. 28), p. 14, referencing <u>Neagley v. Atascosa County EMS</u>, 2005 WL
354085 (W.D.Tex.); <u>Mooney v. Aramco Services Co.</u>, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *abrogated on other
grounds* in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003); <u>Hayes v. Laroy Thomas, Inc.</u>, 2006 WL 1004991
(E.D.Tex. 2006); <u>Lima v. International Catastrophe Solutions, Inc.</u>, 493 F.Supp.2d 793 (E.D.La.2007), as examples
of cases using the <u>Lusardi</u> two-step analysis.

complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims. Based on our review of the case law, no representative class has ever survived the second stage of review.

Mooney, at 1213-1214.

The Fifth Circuit stated "'[a]t the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'" Mooney at 1214, FN. 8, citing Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988). However, as was recognized in Xavier v. Belfor USA Group, Inc., 585 F.Supp.2d 873 (E.D. La. 2008):

> In deciding whether the Plaintiffs have met the requirements of the two-step *Lusardi* approach, the Court is mindful that "it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation." Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiffs at the defendant's expense. Finally, certification is not automatic. While the standard at the notice stage is not particularly stringent, it is by no means automatic.

Xavier, at 878 (internal citations omitted).

As stated above, plaintiff alleges Cingular's payment policy for part-time workers violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206. Although not specifically pled in her complaint, plaintiff also asserts a class based on alleged record-keeping deficiencies in violation of 29 C.F.R. §516.20(a). Since Sperling and Lusardi

were both ADEA claims where age discrimination was alleged, and in the present matter FLSA violations are alleged, at this stage of the <u>Lusardi</u> analysis, the question is whether plaintiff has made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" which violated the FLSA and/or 29 C.F.R. §516.20(a). For the reasons given below, the undersigned finds plaintiff has not met that threshold.

<u>Minimum Wage Violation</u>

Plaintiff frames Cingular's policy as one of "Underpayment of Wages Due."[24] Despite its name, the actual policy simply required employees to timely submit and managers to timely verify an employee's actual hours worked prior to a certain payroll deadline, in order to be paid for those hours on the next payday. Plaintiff describes the policy as follows:

> Cingular admits its "Underpayment of Wages Due" policy uniformly required deferment of wage payments to later pay periods whenever an employee or manager failed to timely enter actual hours worked in a separate time entry report."[25]

The court has not been pointed to any authority which supports finding an employer violates the FLSA when it requires an employee to timely submit evidence of hours worked in order to be timely paid. Neither has the court been cited to any authority

---

[24] *Supplemental Memorandum in Support of Motion for Conditional Class Certification* (rec. doc. 67-1), p. 6, FN 7, citing "Exh. A, Cingular Payroll Reporting Policy "Underpayment of Wages Due", See Defendant's Memorandum in Support of Motion to Dismiss p. 3. Declaration of Kathleen Holdridge, Director of Finance, AT&T Mobility, LLC, Exh. 3 to Def.'s Motion to Dismiss, Doc. # 17, ¶5, 6."

[25] *Ibid.*, p. 6.

where a manager's failure to timely verify an employee's hours is a FLSA violation,

particularly where there is a stated procedure to remedy an untimely submission. Put

another way, Cingular's policy was that it would pay its employees for the hours they

actually worked when they were made aware of them, whether in a timely fashion or not.

The failure to provide notice of hours worked does not give rise to a violation of the

FLSA as the Fifth Circuit recognized in Newton v. City of Henderson, 47 F.3d 746 (5th

Cir 1995):

> "An employer who is armed with [knowledge that an employee is working
> overtime] cannot stand idly by and allow an employee to perform overtime
> work without proper compensation, even if the employee does not make a
> claim for the overtime compensation." Forrester v. Roth's I.G.A. Foodliner,
> Inc., 646 F.2d 413, 414 (9th Cir.1981). . . [H]owever. . .if 'the employee
> fails to notify the employer or deliberately prevents the employer from
> acquiring knowledge of the overtime work, the employer's failure to pay for
> the overtime hours is not a violation of § 207.' Id. . . . The City established
> specific procedures to be followed in order to receive payment for overtime.
> An employee was required to submit a request for overtime within 72 hours
> of the time worked and to use a specified payroll form. Newton ignored
> these procedures. If we were to hold that the City had constructive
> knowledge that Newton was working overtime because Freeman had the
> ability to investigate whether or not Newton was truthfully filling out the
> City's payroll forms, we would essentially be stating that the City did not
> have the right to require an employee to adhere to its procedures for
> claiming overtime.

Newton, at 748-749.

Likewise, in this matter, in order to find Cingular's policy violated the FLSA, the

undersigned in effect would be stating Cingular did not have the right to require its

employees, including managers, to adhere to its procedures for timely payment of

exception time.  There is no allegation or evidence that Cingular encouraged its

12

employees, or its managers, to submit exception time hours after the cut-off date, or prohibited the timely submission of same.  Moreover, if an employee or manager missed the deadline for the current pay period, either through their or the manager's dilatory submission, the employee could still submit the hours and receive a supplemental paycheck for the late hours prior to the next pay period.

The undersigned finds Cingular's policy was not one to pay exception time late. Quite the contrary, Cingular's policy required timely submission of hours worked that qualified as exception time in order to be paid the legitimate wage for those hours on the next payday. In the event that did not occur because of either the employee or manager failing to timely submit or verify those hours, the employee had a specific remedy stated in the policy. If the employee failed to take advantage of that remedy, Cingular paid the default payment for regular hours until such time as the employee provided notice of the actual exception time hours worked. The undersigned finds that this does not constitute a common "policy or plan" violative of the FLSA.

In addition to the foregoing, the undersigned finds plaintiff has failed to show there are similarly situated potential opt-in plaintiffs, even assuming the policy was violative of the FLSA.  The evidence in the record demonstrates plaintiff failed to turn in her exception time hours on a timely basis, and from this, the plaintiff argues the Underpayment of Wages Due procedures led to a wage payment less than minimum wage.  Plaintiff then speculates since this was a national policy, others across the country must also have failed to turn in their hours, resulting in the same underpayment.

13

The jurisprudence is consistent that, although the standard is lenient, there must be at least some factual showing of similarly situated employees who actually desire to opt-in to the litigation.  The undersigned has found no authority where a single plaintiff's affidavit and his or her "information and belief" there are other similarly situated employees was enough to meet the threshold.[26]

As previously noted, the undersigned does not agree the Underpayment of Wages Due procedures were violative of the FLSA, but assuming arguendo that they were, there is no evidence in the record any other Cingular employee had a similar complaint. One could easily infer from the lack of this evidence that other employees adhered to the policy of timely reporting their exception time. Regardless, the conclusion there are similarly situated employees is speculative and unsupported, and therefore insufficient to establish this element necessary for conditional certification.[27]

For the reasons given above, the undersigned finds plaintiff has failed to make substantial allegations that the putative class members were victims of any decision, plan or policy violative of FLSA.  See Mooney, 54 F.2d 1207, 1214, FN. 8, citing Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988). In addition, plaintiff has failed to establish there are similarly situated employees who desire to opt-in to the litigation.

---

[26] Cf. Kuperman v.ICF International, No. 08-565, 2008 WL 4809167 at 1-3 (E.D.La. 2008); Xavier v. Belfour USA Group, Inc., 585 F. Supp. 2d 873 (E.D. La. 2008); Treme v. HKA Enterprises, Inc., No. 07-1134, 2008 WL 941777 (W.D. La. 2008).

[27] See Treme v. HKA Enterprises, Inc., No. 07-1134, 2008 WL 941777, *3 (W.D.La. 2008).

14

Recordkeeping Violation

Plaintiff did not plead this cause of action in her Petition.  However, she asserts provisional class certification based on inadequate record keeping and notice violations under 29 C.F.R. § 516.2(a), which is cited by plaintiff as follows:

> 29 C.F.R. §516.2(a) provides in part: "Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each and every employee. . .(6)(ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, pr week, per piece, commission on sales, or other basis, . . . (7) Hours worked each workday and total hours worked each workweek. . ., (8) Total daily or weekly *straight-time earnings or wages due for hours worked during the workday or workweek*, exclusive of premium overtime compensation,...(10) Total additions to *or deductions from wages* paid each pay period....in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions, and (12) Date of payment and *the pay period covered by payment* 29 C.F.R. §516.2(a).[28]

Plaintiff's primary complaint appears to be with the information available on her actual paycheck stub, and not that Cingular failed to keep adequate payroll records. Plaintiff complains she was unable to determine the discrepancies between her pay check and her time sheet hours, and "[i]t required a lawsuit and considerable time and effort on the part of Cingular's attorneys to obtain and assimilate the payroll data and to create a report showing the hours and pay periods covered by each paycheck."[29]

Plaintiff has cited no authority for her argument that the records required by 29 C.F.R. § 516.2(a) are required to be on a paycheck stub.  As argued by defendants,

---

[28]*Memorandum in Support of Plaintiff's Motion for Conditional Class Certification and for Leave to Provide Notice to Prospective Class Members* (rec. doc. 34-1), pgs. 6, 7, FN 5.

[29]*Ibid.*, p. 7.

plaintiff could easily have calculated the hours and rate paid; after all, she filled out her own time sheets, and knew the hours she had worked each pay period.  In any case, the only allegations made are particular to plaintiff: that she was confused about her hours and rate of pay, and she personally had a difficult time getting payroll records from Cingular.  Therefore, the undersigned finds plaintiff has failed to make substantial allegations that the putative record keeping violations class members were victims of any plan, policy, or decision that violated the cited record keeping requirements

### *Conclusion and Recommendation*

For the reasons given above, the undersigned finds plaintiff has failed to make substantial allegations that the putative minimum wage violation class members were victims of any decision, plan or policy violative of the FLSA.  In addition, plaintiff has failed to establish there are similarly situated employees who desire to opt-in to the litigation.  Finally, plaintiff has failed to make substantial allegations that the putative record keeping violation class members were victims of any plan, policy, or decision that violated the cited record keeping requirements.  Therefore,

**IT IS RECOMMENDED** that Plaintiff's Motion for Conditional Class Certification (Resubmitted)(rec. doc. 67) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being

16

served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Lafayette, Louisiana, this 22nd day of February, 2010.

Patrick J. Hanna
United States Magistrate Judge

17