UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE  DIVISION

| | |
|---|---|
| **COURTNEY SANDOZ** | **CIVIL ACTION NO.  6:07-CV-01308** |
| **VERSUS** | |
| **CINGULAR WIRELESS, LLC,** | **JUDGE: REBECCA F. DOHERTY** |
| **AT&T MOBILITY, LLC AND** | |
| **CINGULAR WIRELESS** | |
| **EMPLOYEE SERVICES, LLC** | **MAG. JUDGE MILDRED E. METHVIN** |

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**PLAINTIFF'S OPPOSITION  TO MAGISTRATE JUDGE
REPORT AND RECOMMENDATIONS**

Plaintiff opposes the following findings and conclusions by the Magistrate Judge in his Report and Recommendation dated February 22, 2010 (Doc. 80, Rec Doc. 67).

1.  Plaintiff failed to show Cingular's Payment in Arrears Policy was a "plan or policy violative of the FLSA".

2.  Plaintiff failed to show the existence of similarly situated potential opt-in plaintiffs with respect to the Payments in Arrears Policy.

3.  Plaintiff failed to make a substantial allegation of potential class members who were victims of a plan, policy, or decision that violated FLSA record keeping requirements.

**A.  The Magistrate Judge's conclusion that Cingular's Payment in Arrears Policy was not violative of the FLSA is based on erroneous findings of fact and misapplication of Fifth Circuit precedent.**

The Magistrate Judge found Cingular's requirement for timely submission and verification of Exception Time hours worked, in order to be paid the "legitimate wage"

(minimum wage) for those hours on the next payday, was lawful.

The conclusion was based on <u>Newton v. City of Henderson,</u> 47 F.3d 746 (5th Cir. 1995), wherein the appellate court reversed a city police officer's overtime pay award, on finding the employer did not have actual or constructive knowledge the officer was working unauthorized overtime as an undercover officer with the DEA.

The Magistrate Judge applied this holding over broadly, to support his conclusion that an employer may lawfully refuse to pay minimum wage for non-overtime hours which the employer has scheduled the employee to work.

Facts: While employed by the City of Henderson as a police officer Newton was assigned to work with the DEA East Texas Drug Task Force.  Under the agreement between the two agencies, the City remained Newton's employer and was responsible for paying  salary and benefits, including overtime, while DEA had the right to control Newton's day-to-day functions and duties.

The City's policies required all employees to obtain approval prior to working overtime. Newton requested and the City denied permission for him to work more than the 12.5 overtime hours the City usually allowed.   Newton submitted time reports to the City and was paid for all of the hours claimed on those reports.  He submitted a separate "Form 352" time report to the DEA which reflected additional overtime hours worked, but he did not turn those reports in to the City until he resigned.

Newton claimed his City supervisors knew that he was putting in excess overtime hours because he reported his activities to them on a daily basis. The supervisors testified they knew DEA required working "unscheduled hours", but they assumed he was taking flex time off so

that he did not exceed his authorized work hours in any given pay period.

In reversing the district court's award for overtime pay and liquidated damages, the Fifth Circuit found:

1. Newton was not instructed by his supervisors to work the extra overtime hours.

2. The City did not have actual knowledge of the overtime Newton was working for DEA.

3. Newton ignored the City's requirement that he submit a request for overtime within 72 hours of the time worked, on a specified payroll form.

The appeal panel concluded the employer's access to information regarding the Task Force's activities generally was insufficient to show that the City knew or should have known Newton was working overtime.

However, the *Newton* panel also noted:

> "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, *even if the employee does not make a claim for the overtime compensation.*"

*Newton*, at 748, citing   Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981).   In *Forrester* the appellate court affirmed a grant of summary judgment for the employer because (a) the employee turned in time sheets which did not include the overtime hours and (b) the employee did not demonstrate that the employer should have known that the employee worked more hours than those claimed on his time sheets.  *Id.*

*Newton* also cited Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir.1972), for the proposition:

> "......an employee would not be estopped from claiming additional overtime if "[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate." *Id.*

The only information Newton's supervisor had was his own experience as a former undercover narcotics agent, that "this kind of work requires an officer to work outside his scheduled hours" but did not necessarily require overtime. Additionally, the court found the City could reasonably expect officers to compensate themselves for unscheduled hours worked by taking "flex time" off.

The Magistrate Judge's reliance on *Newton* as authority for the proposition that Cingular's policy does not violate the FLSA is misplaced, because:

    a.  *Newton* is an overtime case, not a minimum wage case

    b.  There is no authority for not paying minimum wage for all hours worked in the next pay check, and

    c.  This case is factually distinguishable in material respects.

Most importantly, this case does not involve unauthorized work hours of which Cingular is or was unaware.  Sandoz and other similarly situated Retail Sales Consultants worked "excess" hours (hours over 19 in a week)[1] which were scheduled and assigned to them by the store supervisor.  The hours were entered by the supervisor on the employees' time sheets on the store computer prior to the commencement of the workweek, and appeared on the store computer time sheet in the "scheduled hours of work" section at the end of the pay period, prior to the time entry deadline.

---

[1] Importantly, despite Cingular's terminology these are what the FLSA refers to as "regular hours", or non-overtime hours.

1. Unlike *Newton,* the relevant "excess" hours were authorized by the employer.

2. Unlike *Newton*, Cingular had actual knowledge of the number of overtime hours Sandoz worked because the store supervisor scheduled the hours, and the work was performed literally under the store supervisor's nose.  If Sandoz failed to report for work as scheduled the supervisor would be the first to know, as the supervisor would be required to get someone to cover her shift.

3. Unlike *Newton,* Cingular had access to sufficient information on the employee's store time sheet to know not only that the workers were working more than nineteen hours per week, but the precise number of  "excess hours" they were scheduled to work.

4. Unlike *Newton,* the employee's supervisor had personal knowledge when an employee worked as scheduled and when they did not, and so sufficient information to know whether the scheduled "excess hours" were worked or not.

5. Unlike *Newton*, the employer had no right to expect the employee could take "flex time" off in lieu if being paid minimum wage for all hours worked in the next check.

Under these facts, *Newton*, *Forrester* and *Brumbelow* support the opposite conclusion than that reached by the Magistrate Judge.  Where the employer knew or had reason to believe the "default" nineteen hours did not represent actual work hours, the employee was entitled to be paid at least minimum wage for all hours.  A policy which requires deferring pay for those hours to later pay periods with sub-minimum wage effect does violate the FLSA.

**2. The conclusion that Plaintiff failed to show the existence of similarly situated potential opt-in plaintiffs with respect to the Payments in Arrears Policy is wrong as a matter of law.**

The Magistrate Judge found Plaintiff's suggestion that there are similarly situated employees with respect to the alleged minimum wage violations speculative and unsupported.

The stated rationale for this recommendation was the absence of a reported case where a single plaintiff's affidavit and her "information and belief" there are other similarly situated employees was deemed sufficient enough to meet the threshold.[2]

Plaintiff suggests the requirement for other affidavits and/or asserted claims is too strict a standard, especially where there is a substantial allegation that the employer's systemic violations of FLSA notice and disclosure regulations have effectively prevented putative class members from being able to compute their effective hourly rate pay, and thus prevented knowledge of potential minimum wage violations.

At the first stage, the district court makes a decision whether notice of the action should be given to potential class members, usually based only on the pleadings and any affidavits which have been submitted.  Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.  Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

Preliminary certification is appropriate where, if the allegations regarding employer's pay practices as stated in the complaint prove to be true, it would be reasonable to conclude that the employer engaged in the same practices with other employees.  Affidavits of other employees are not necessary.  Lima v. International Catastrophe Solutions, Inc., 493 F.Supp.2d 793, 800. (E.D.La.2007).

---

[2]The Magistrate Judge found it reasonable to infer from the lack of a similar complaint by other employees, "that other employees adhered to the policy of timely reporting their exception time" however he did not base his recommendation on that inference.

On those findings the *Lima* court allowed notice to prospective class members so that a definitive determination as to whether the putative class members are similarly situated could be made after some minimal discovery. *Id.*

As shown in Plaintiff's Reply memorandum, Cingular's own records demonstrate the illegal effect of the Policy in operation. In weeks ending October 30, December 4 and December 18, 2004, payment of the "default" 19 hours to Sandoz resulted in an effective sub minimum wage rate for all hours worked. These were not aberrations. The Underpayment of Wages Due policy was designed to do what its title suggests. The Policy not only provided a mechanism for paying fewer than all hours worked in the next check, it explicitly required late payment when a store manager failed to verify hours worked by a time entry deadline, as opposed to paying at least minimum wage for all hours as the law required.

Evidence that Cingular's policy required late payment of wages in certain defined circumstances, that the policy's application had a sub-minimum wage effect in those circumstances, and that it was uniformly applied company wide, are sufficient to support the conclusion that other employees were similarly affected.

**3. Record Keeping Violations**

The Magistrate Judge concluded the Plaintiff failed to make substantial allegations that putative class members were victims of any plan, policy, or decision that violated FLSA record keeping requirements, based on the following findings:

a. There was no cited no authority for Sandoz' argument that the information required by 29 C.F.R. § 516.2(a) must be provided on or with a paycheck stub.

7

    b.  Plaintiff could easily have calculated the hours and rate paid, because she filled out her own time sheets, and she knew the hours she had worked each pay period.

    c.  "The only allegations made are particular to plaintiff: that she was confused about her hours and rate of pay, and she personally had a difficult time getting payroll records from Cingular."

These findings and conclusions are incorrect.

Plaintiff alleged that all members of the prospective class were adversely affected by Cingular's failure to make available to employees sufficient information to permit a "ready calculation" of the work hours for which they are being paid currently.

The Dept. of Labor requires employers to keep and maintain records which explain and allow an employee to readily determine the basis of his or her pay for each workweek.  This requirement includes not only information as to the monetary amount paid, the number of hours worked each workweek, and the date of payment, but also (a) the basis for the amount paid, (b) the total weekly straight-time earnings or wages due for hours worked during the workweek, (c) individual employee records showing the dates, amounts, and nature of any deductions, and (d) the pay period(s) covered by each payment. 29 C.F.R. §516.2(a)[3].

When Exception Time was rolled over to a later pay period there was no way for an

---

[3] 29 CFR §516.2(a) provides in part: "Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each and every employee ...(6)(ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis,... (7) Hours worked each workday and total hours worked each workweek..., (8) Total daily or weekly *straight-time earnings or wages due for hours worked during the workday or workweek*, exclusive of premium overtime compensation,...(10) Total additions to or *deductions from wages* paid each pay period.... in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions, and (12) Date of payment and *the pay period covered by payment* 29 C.F.R. §516.2(a).

employee to compare pay check stubs and time sheets for a particular pay period and determine whether he or she was paid properly for all hours of work during the period.

In order to calculate an employee's effective hourly rate in any pay period one would have to know not only the hours worked that period, but also which hours worked in the immediate past pay period were rolled over to subsequent work weeks (and paid late), and which paid hours in the current check were rolled over from previous work weeks (and paid late).

The FLSA requires this information to be readily available to an employee, without having to resort to legal action. An employer's failure to maintain pay records that correspond with particular time periods is an FLSA record keeping violation. Etienne v. Inter-Country Service Corp. 173 F.3d 1372 (11th Cir. 1999), Olsen v. Superior Pontiac, 765 F.2d 1570, 1579, modified 776 F.2d 265 (11th Cir. 1985).

Contrary to Defendant's claims, the use of a computerized pay record (check stub) that does not accurately reflect the number of hours the employee actually worked during any covered workweek is a violation of 29 C.F.R. 516.2. Chao v. Vidtape, Inc., 196 F.Supp.2d 281(E.D.N.Y. 2002).[4] The regulations do not require an employee to request this information and have the request go unanswered in order to be aggrieved by Cingular's record keeping violations.

All employees were adversely affected by these record keeping violations. The question of how many is a matter for second stage discovery after the class is provisionally certified.

---

[4] The Earning Statements and paycheck exhibits demonstrate that Cingular misstated the actual number of hours worked in the pay period and the effective FLSA rate for those hours represented by the payment.

**4. The action should be provisionally certified as a representative action to determine whether Plaintiff is a prevailing representative party based on the employer's change in policy which has benefitted the class as a whole.**

On information and belief Plaintiff avers Defendants have ceased the practices complained of, resulting in class wide relief and the accomplishment of the major goal of the litigation. Cingular's change in policy should have the effect of eliminating future minimum wage violations with respect to the putative class as a whole. Sandoz is entitled to prevailing party status if she can establish that a primary goal of the law suit was achieved, and that the suit itself caused the defendant to remedy the complained of conditions. Plaintiff adopts by reference the argument and authorities to that point.[5]

**Conclusion**

For the foregoing reasons Plaintiff requests that this action be provisionally certified as a collective or representative action pursuant to 29 USCA §216(b), that Plaintiff's counsel be authorized by the Court to give notice to prospective class members of the pendency of the action and of their right to join the action.

---

[5] Heath v. Brown, 858 F.2d 1092, 1094 (5th Cir.1988); Garcia v. Guerra, 744 F.2d 1159, 1162 (5th Cir.1984); Williams v. Leatherbury, 672 F.2d 549, 550-51 (5th Cir.1982). Pembroke v. Wood County, 981 F.2d 225, 230 (5th Cir.1993); Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board, 919 F.2d 374 (5th Cir.1990), American Federation of State, County, and Mun. Employees, Local 59 v. El Paso City/County, 1999 WL 824479 (5th Cir. 1999); continuing viability of the catalyst theory discussed: Foreman v. Dallas County, Tex., 193 F.3d 314, 319; Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 194, 120 S.Ct. 693 (2000)

Respectfully Submitted,

s/Christopher L. Zaunbrecher
CHRISTOPHER L. ZAUNBRECHER (09546)
Briney & Foret
413 Travis Street, Suite 200
Post Office Drawer 51367
Lafayette, Louisiana 70505-1367
Telephone: (337) 237-4070
Facsimile: (337) 233-8719
E-mail:  zaunbrecher@brineyforet.com
Attorney for Courtney Sandoz

CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

s/Christopher L. Zaunbrecher
CHRISTOPHER L. ZAUNBRECHER (09546)