UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **COURTNEY SANDOZ** | **CIVIL ACTION NO. 07-cv-1308** |
| **VERSUS** | **JUDGE DOHERTY** |
| **CINGULAR WIRELESS, LLC,** | **MAGISTRATE JUDGE HANNA** |
| **AT&T MOBILITY, LLC,** | |
| **CINGULAR WIRELESS** | |
| **EMPLOYEE SERVICES, LLC** | |

### *REPORT and RECOMMENDATION*

Before the court are Plaintiff's Motion for Expansion of the Minimum Wage Class [Rec. Doc. 153] and Defendants' Motion to Decertify Conditional Class [Rec. Doc. 158], both of which motions have been referred to the undersigned for disposition.  Both motions are opposed.  Oral argument was held on October 23, 2012.  For the reasons set out below, the undersigned recommends that the Motion for Expansion of the Minimum Wage Class be DENIED,  the Motion to Decertify Conditional Class be GRANTED and that the opt-in claimants be DISMISSED WITHOUT PREJUDICE.

### *Background*

This is a collective action under the Fair Labor Standards Act, 29 USCA §206 and §216, for the defendants' alleged failure to timely pay minimum wages for hours worked.  Plaintiff Sandoz alleges she was a part-time retail sales

consultant [RSC] for Cingular in Lafayette, Louisiana, from October 10, 2004 until her resignation on October 5, 2005. She alleges she was paid for a minimum of 19 hours per week at a rate of pay in excess of the minimum wage, and she regularly worked extra hours, referenced as "exception time." She asserts that although exception time was entered on an employee time sheet in the scheduled hours section, the defendants' policy was to not pay any wages for exception time in the next pay check if the store manager failed to verify the hours worked in a separate time entry report. [Rec. 1-1, para. 7] Sandoz alleges she was paid in arrears for her exception time hours worked on several occasions, and consequently, she was paid an amount below the minimum wage for the actual hours worked during pay periods when her exception time was not paid concurrently with her payment for her regular 19 hours.

Sandoz filed this action on April 23, 2007, in the 15th Judicial District Court, Lafayette Parish, Louisiana; the matter was removed to this Court in August, 2007. In June, 2008, Sandoz sought conditional class certification, for leave to notify prospective class members of the pendency of the action, and proposing a form for Notice to prospective class members. [Rec. Doc. 34] After objections regarding the scope of the proposed notice and that the proposed opt-in period (120 days) was overbroad, by January, 2009, Plaintiff sought a hearing on

the Motion for Class Certification.  The motion was treated as a second motion for class certification, addressing the issue of timeliness, and the first motion was denied as premature. [Rec. Doc. 63] On referral from the district judge, the undersigned found that the motion was timely and recommended that Plaintiff be allowed to re-file the motion for certification on the merits. [Rec. Doc. 66] The motion was resubmitted on July 14, 2009. [Rec. Doc. 67]

In a Report and Recommendation dated February 22, 2010, the undersigned recommended that the motion be denied. [Rec. Doc. 80] On Plaintiff's objection, the district judge issued a ruling on May 28, 2010, granting the motion in part and denying it in part.  The motion was denied to the extent class certification was sought relative to record keeping violations, but the motion was granted to the extent it sought provisional certification of a class for minimum wage violations. Plaintiff was ordered to modify the proposed class, submit for approval a revised proposed Notice Form for potential class members, and the parties were referred back to the undersigned for development of an appropriate discovery plan. [Rec. Doc. 87]

Plaintiff's first proposed revised Notice met objection from the defendant regarding the time window.  Through the summer of 2010, the parties worked with court assistance to resolve their differences, and another version of the Notice was

submitted by the plaintiff on October 8, 2010, resolving the time window dispute, with disagreement continuing on other aspects of the Notice. [Rec. Doc. 106] On the order of the undersigned, a Second Revised Notice of Prospective Class Members was approved. [Rec. Doc. 109-1, 110] Notices were mailed to identified prospective class members, certifying same to the court. [Rec. Doc. 132] By the deadline date referenced on the notice (August 6, 2011), no notice forms had been filed with the court, and no request for extension of the deadline had been sought by Plaintiff.

On August 8, 2011, the first 'opt-in' election was made by/for Gregory L. Pratt followed by Krista Stegall and Andre Savoie who executed consents to join the suit on August 9, 2011. [Rec. Doc. 129-131] On August 12, 2011, a consent form was executed by Ebony Martin Plumbar. [Rec. Doc. 133] In response to a defense Motion to Strike Untimely Opt-In Notices [Rec. Doc. 134] and Plaintiff's Cross Motion for Leave to File Opt-In Notices [Rec. Doc. 136], the undersigned found that "[B]y any analysis, the opt-ins made subject of the Motion to Strike were not timely executed and filed...." [Rec. Doc. 145, p. 9] Further, the undersigned found that on the record presented, there was no "proof of excusable neglect sufficient to warrant ignoring and extending the agreed-upon and court-approved 'date certain' deadline in this case." Nevertheless, the court found that

while the reasons for the late filings appeared "dubious at best," allowing the six day delay for the opt in filings would not unduly prejudice the defendants. [Rec. Doc. 145, p. 13-14]

*The Motions before the Court*

**I. Motion for Expansion of Minimum Wage Class (for notice purposes) by Plaintiff [Rec. Doc. 153]**

In this motion Plaintiff seeks an order provisionally certifying an expanded nationwide Minimum Wage class for notice purposes to include:

> all part time Retail Sales Consultants who worked in any Cingular Retail Store at any time from April, 2004 to January 1, 2006. [Rec. Doc. 153, p. 2]

The motion is similar to the motion previously filed by Plaintiff Sandoz in April, 2011. [Rec. Doc. 120] In that motion, Sandoz sought to expand the notice previously approved by the Court to include nationwide notice to all part-time Retail Sales Consultants employed by Cingular during the period of April 1, 2004- January 1, 2006[1]. That motion was opposed by the defendants, and, after oral argument and extensive briefing, this Court denied the motion, finding:

> The class presently conditionally certified by the District Judge is narrowly described to include the Ambassador Caffery store. Notice to persons beyond that location, absent an express ruling from the

---

[1] There is no dispute between the parties that as of January 1, 2006, the defendants began using a payroll program (KRONOS) which cured the 'rolling forward' problem.

> District Court expanding the class would be premature. Moreover, while discovery has shown there is a statistical possibility that FLSA violations could have occurred at other locations, Plaintiff has submitted no evidence the policy was actually applied as written at these locations. [Rec. Doc. 128, p. 6]

In the current motion, Plaintiffs urge that since the previous ruling, evidence provided by Cingular as to the work hours and wages for the four opt-in plaintiffs demonstrates that the "rolling over Exception Time was a routine and regular occurrence, and resulted in actual minimum wage violations for all of the part time RSC's who have opted into this action." [Rec. Doc. 153, p. 7]  On that basis, Plaintiffs assert that they have demonstrated more than a mere potential for minimum wage violations, warranting expansion of the minimum wage class for notice purposes beyond the Lafayette Ambassador Caffery store location, to include all Cingular Retail Stores nationwide during the relevant time period.

In opposition to the motion [Rec. Doc. 156], Defendants respond that the only "class" before the Court is the conditionally-certified collective action comprised of RSCs who worked at the Lafayette, Louisiana Ambassador Caffery store from April 1, 2004 through January 1, 2006.  After notice was issued to the former employees of that store, only four individuals submitted opt-in forms, each on dates beyond the opt-in deadline.

According to Defendants none has a valid, timely claim for minimum wage

underpayment, and none is similarly situated to Plaintiff Sandoz. Defendants argue that the calculations upon which Plaintiffs base their claims are disingenuous and fail to provide a true representation of the pay each individual actually received, since the individuals received additional types of pay even during weeks in which some pay was rolled forward. According to Defendants, even if it were true that their policy was to roll pay forward, that policy does not mean that individuals were underpaid the minimum wage, and there is no evidence in the record that such policy resulted in an underpayment as to anyone in a purported nationwide class. Defendants further argue that because Plaintiff Sandoz's Conditional Class should be decertified, she should not be permitted to expand the class nationwide.

When the effort to expand the class was last before the undersigned, this Court found there was no basis for nationwide expansion/notice as there was no evidence that had been discovered to warrant such expansion. Sandoz had failed to establish a "similarly situated" finding as to other markets, providing instead only a "statistical possibility" of minimum wage violations in other markets. [Rec. Doc. 128, pp. 5-6] That is still the case as no evidence has been put forward to suggest that as to other markets of Cingular, there remains anything other than a *potential* or *statistical possibility* for minimum wage violation, already found by

the undersigned to be insufficient. [Rec. Doc. 128]

Therefore, for the reasons articulated above, it is recommended that Plaintiffs' Motion for Expansion of the Minimum Wage Class [Rec. Doc. 153] be DENIED.

**II. Defendants' Motion for Decertification of Conditionally-Certified Collective Action [Rec. Doc. 158]**

Not only do the defendants oppose the Plaintiffs' proposed expanded class, but, true to the *Lusardi* "second stage" analysis discussed below, they also seek to decertify the existing limited Conditional Class, which includes all persons who worked as part-time Retail Sales Consultants at the Lafayette Ambassador Caffery store from April 1, 2004 to January 1, 2006. [Rec. Doc. 87] Defendants urge that the "fairly lenient standard" applied at the notice stage in this litigation is no longer applicable at the "merits stage," and this Court must apply a stricter standard of proof, looking beyond the pleadings and affidavits to determine whether the potential plaintiffs are similarly situated in light of all information gathered during the post-opt-in discovery, which process Defendants allege is now complete. If the conditional group of plaintiffs does not meet its burden to show that they are similarly situated, Defendants urge that decertification is warranted.

In opposition, Plaintiffs argue that the evidence shows that all part-time

RSCs who have opted into this action are similarly situated to Plaintiff Sandoz "in every material respect," since each was subjected to the same policy and practice which resulted in minimum wage violations in Sandoz's case. On the timeliness issue, which Defendants assert is critical, Plaintiffs argue that equitable tolling should prevent the running of time on claims by all prospective class members. Further, Plaintiffs assert that the factors pertinent to these issues are common to all prospective class members and require no individualized inquiry. [Rec. Doc. 164]

### *Discussion*

In their memoranda, the parties agree that the Fifth Circuit has not yet defined a test for determining whether plaintiffs are sufficiently similarly situated to advance their claims together in a collective §216(b) action. However, as both parties have noted, this circuit has upheld decisions which adopted the "two step" inquiry described in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351(D.N.J.1987). *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). The two step approach contemplates a "conditional certification" of the class at the first stage based on limited information, and at the second stage, after appropriate discovery, evaluating whether the conditional class should be decertified based on the lack of "similarly situated" class members. *Lusardi*, at 358. The second determination is typically precipitated by a motion for decertification by the

defendant, usually after discovery is largely complete.[2] At that stage, the court, having more information on which to base its decision, makes a factual determination on the similarly-situated question.

> If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims. ...no representative class has ever survived the second stage of review. *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *abrogated on other grounds in Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

### *Are the opt-ins similarly situated to Sandoz?*

Plaintiff asserts first that three of the four opt-ins are similarly situated to Sandoz in that they were part-time RSCs who were regularly paid for nineteen regular hours of work. According to Plaintiff, all four opt-ins suffered actual minimum wage violations. [Rec. Doc. 153, p. 8] However, all parties concede that Opt-in Krista Stegall is not similarly-situated to Plaintiff Sandoz or any of the other opt-ins, as Stegall was regularly scheduled to work 30 hours per week, and Plaintiffs have offered no calculations relative to Stegall to demonstrate alleged FLSA violations similar to those alleged for other opt-ins or Plaintiff Sandoz.

---

[2]The record demonstrates that the discovery plan laid out by the parties, with court assistance, is largely complete.

As to the other three opt-ins, the key dispute between the parties is whether actual and actionable minimum wage violations have been established for each/any. Without such a showing, the opt-ins cannot be considered similarly-situated to Sandoz.

This Court first notes the difference between the parties' interpretations of how the minimum wage pay calculation is made for consideration of FLSA compliance. Plaintiffs argue that minimum wage violations are evident for each opt-in on the face of wage/hour information supplied by Defendants in response to discovery. Missing from Plaintiff's calculations, however, according to Defendants, are any considerations of commission payments to the plaintiffs allocated to given work weeks. Once commission payments are factored into the proper equation, per the defendants' record offerings, the alleged violations disappear from the face of the exhibits. In fact, Defendants assert that there are no violations for any of the opt-in claimants. Plaintiffs respond that this is an inappropriate manipulation of the payment record.

Generally, to determine whether an individual has been paid the appropriate minimum wage, the amounts received by that person for a work week in a pay period is divided by the hours worked during the work week. This pay-divided-by-hours calculation is referred to as the 'Klinghoffer Rule,' cited by both parties

in briefs and arguments to the court. *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). In *Klinghoffer*, the court found that if the **total** amount paid to each worker during any given week is divided by the **total** time he worked that week, and if the resulting hourly wage meets or exceeds the statutory minimum wage, then the requirements of 29 U.S.C. §206(a) are met. *Id*. Although Plaintiffs argue that Klinghoffer is distinguishable and inapplicable to the analysis required of the court, the regulations adopted under the FLSA make clear that the workweek is the standard by which compliance is to be evaluated, and the Department of Labor has adopted the 'Klinghoffer Rule' in its opinion letters and in its Field Operations Handbook.

The Fifth Circuit has recognized the application of the rule by district courts in this circuit, noting rejection of the standard by at least one district court outside this circuit. *See Albani v. Coast 2 Coast, Inc.*, 444 Fed. Appx. 788, 805 (5th Cir. 2011) (unpublished). Cases applying the rule have recognized that although the calculation can result in variable rates of pay during work weeks, the relevant question is whether an individual receives in a work week an amount equal to or higher than the effective minimum wage for each hour worked. *Pruell v. Caritas Christi*, No. 09-11466, 2010 WL 3789318 (D.Mass. Sept. 20, 2010); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193 (4th Cir. 1969). In making the

calculation, the 'total amount paid' properly includes both salary and commissions. *Klinghoffer*, 285 F.2d at 490; *Solis v. Tally Young Cosmetics, LLC*, No. 09-4804, 2011 WL 1240341(E.D.N.Y. Mar. 4, 2011); *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985). See also DOL Field Operations Handbook §30b02. Commission payments may be allocated across the weeks of the period of time in which they were earned. The regulations allow for the allocation of commissions equally when they cannot be specifically calculated by reference to the week in which they were actually earned. See 29 CFR §778.117-120.

Unlike the situations in cases cited by Plaintiffs, there are no circumstances presented in the instant case where the claimants worked for nothing. The record demonstrates, and Plaintiffs do not seriously dispute, that the opt-in claimants were paid for every hour they worked and for every commission dollar they earned. That fact cannot be ignored, since to do so would result in an overcompensation to each claimant for money already paid to them. Condensed to its essence, then, Plaintiffs claim not that they were in actuality underpaid, but only that on very few occasions cited, they were not paid **timely**, since time rolled over was not allocated to a **specific** work week, but was applied evenly across **both** weeks in a pay period, contrary to Wage and Hour regulations that specify

13

that each workweek "stands alone." 29 CFR §778.104.

Some courts have concluded the FLSA "takes as its standard a single workweek consisting of seven consecutive days." *Roland Electric Co. v. Black*, 163 F.2d 417, 421(4th Cir. 1947), *cert. denied*, 333 U.S. 854, 69 S.Ct. 729, 92 L.Ed. 1135(1948). While there is no requirement that compensation be paid weekly, the court in *Roland Electric* held a claim for unpaid wages under the FLSA arises immediately upon the employer's failure to pay, on the regular pay day, all wages which are due.[3]

Both parties have referenced provisions of the Department of Labor Field Operations Handbook[4], which serves to guide DOL investigators in considering wage/hour compliance issues. FOH 30b04 provides that payment of both minimum wage and overtime compensation due an employee must ordinarily be made at the regular payday for the workweek or, when the pay period covers more than a single week, at the regular payday for the period in which the particular workweek ends. The provision includes an allowance for payment of overtime compensation which cannot be ascertained prior to payroll preparation. In such

---

[3] *Roland Electric* 163 F.2d at 421.

[4] The U.S.Department of Labor's Wage and Hour Division enforces the Fair Labor Standards Act. See 29 U.S.C.A. §204(a). The Wage and Hour Division has issued instructions to its enforcement staff in its Field Operations Handbook.

cases, the requirements of FLSA will be satisfied if the employer pays the overtime compensation as soon after the regular payday as is practicable, and in any event, not later than the next payday after such computation can be made.

Likewise, FOH 30b05, which addresses minimum wage compliance for employees compensated wholly or in part on a commission basis, indicates that the determination of minimum wage/overtime compliance must be made on the facts of each case, using the general principles set out in 29 CFR §778.117-122. Those regulations specifically permit allocation of lump commission payments equally across the weeks of the period of time in which they were earned. They do not provide for a specific time over which commissions must be calculated and paid, and they contemplate that employers may establish periods of different lengths for such purposes. *See also Luther v. Wilson, Inc.*, 528 F.Supp. 1166, 1175 (S.D.Ohio 1981); *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985).

Further, FOH 30b07 provides as follows:

Crediting a bonus or other payments to a MW deficiency.

> (a) A bonus or other payment which would not be considered a part of the regular rate <u>may not</u> be offset against the MW due under FLSA. However, where such payments would be considered a part of the regular rate, they are included with other wages for purposes of determining compliance with the MW provisions of FLSA (See IB 778.208-209).

  (b) Situations may be encountered where the wages paid on the regular payday are not sufficient to satisfy the MW, but the employee at some subsequent date is paid additional wages (for example, a production bonus) for those w/w's included in the bonus payment period. When the additional wages are added to the wages paid on the regular payday, the results are either that the employee has received not less than the MW for each hour worked during that week or that the amount of the MW deficiency has been reduced. In such situations, a monetary violation of the MW provisions exists since payment of not less than the MW required by FLSA must be made on the regular payday for each w/w (see FOH 30b04). However, **where the additional wages for a particular w/w have actually been paid prior to the investigation, and they are sufficient to bring the employee's wages up to the MW for each hour worked during that week, no MW violation shall be reported for that w/w.** If such additional wages paid prior to the investigation are not sufficient to bring the employee's earnings up to the MW for each hour worked during that week, the amount of the <u>remaining</u> MW deficiency shall be computed and reported. The employer shall be advised that no less than the MW must be paid on each regular payday and the employer's assurance of future compliance shall be obtained. [Emphasis added]

 Having studied the payroll data and calculations submitted by the parties, and applying the case-by-case standard described in the regulations and the Field Operations Handbook, this Court finds that the three opt-in claimants at issue (Pratt, Martin, and Savoie) were each paid amounts (including rollover and

commission pay) which, when divided by hours worked, were equal to or exceeded the minimum wage rate. The records likewise indicate that payments, including commissions, were allocated to particular pay periods/work weeks to allow for that calculation, and the undersigned finds no regulatory authority which would prohibit that action. Since the record indicates that each of the opt-in claimants was compensated up to and beyond the minimum wage for each hour worked upon the payment of the allocated commissions, the purposes of the FLSA have been accomplished such that "no MW violation shall be reported" per FOH 30b07. If the Department of Labor would not find an actionable violation on these facts, neither will the undersigned.

    Having determined that no actionable minimum wage violations have been established for the three opt-in claimants Pratt, Martin and Savoie, this Court cannot conclude that the opt-ins are similarly-situated to the original plaintiff Sandoz , for whom actual violations were established, and must find that Plaintiffs have failed to establish that critical element in the *Lusardi* second-step analysis. Class decertification is warranted on that basis alone. Thus the court need not address the significant timeliness issues debated by the parties and whether equitable tolling should be applied "across the board" without regard to individualized inquiries which separately or in combination could preclude a

collective action.

Based on the foregoing,

IT IS RECOMMENDED that the Motion for Decertification of Conditionally-Certified Collective Action [Rec. Doc. 158] be GRANTED.

IT IS FURTHER RECOMMENDED that the claims of the opt-in plaintiffs be DISMISSED WITHOUT PREJUDICE.

Signed at Lafayette, Louisiana this 12th day of November, 2012.

_____
Patrick J. Hanna
United States Magistrate Judge