RECEIVED

MAR 2 7 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

COURTNEY SANDOZ

VERSUS

CINGULAR WIRELESS, LLC, ET AL

CIVIL ACTION NO.: 07-1308

JUDGE DOHERTY

MAGISTRATE JUDGE HANNA

## RULING

Two motions currently pending in this matter were referred to United States Magistrate Judge

Patrick J. Hanna for Report and Recommendation: plaintiffs' "Motion for Expansion of the

Minimum Wage Class" [Doc. 153], and defendants' "Motion to Decertify Conditional Class" [Doc.

158]. A Report and Recommendation issued on November 12, 2012. [Doc. 182]  Plaintiffs have

now filed objections [Doc. 183] to the Report and Recommendation, and defendants have filed a

response thereto [Doc. 184].   After an independent review of the record, and considering the

objections filed, the Court declines to fully adopt the Report and Recommendation, for the reasons

that follow.

## I.      Factual and Procedural Background

Plaintiff Courtney Sandoz filed this action in the 15th Judicial District Court, Lafayette Parish,

State of Louisiana, on or about April 23, 2007, individually and as an opt-in collective action

pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 216(b).[1]  Defendants removed

---

[1]29 U.S.C.A. § 216(b) provides that an employer who violates the minimum wage provisions of
the FLSA "shall be liable to the employee or employees in the amount of their unpaid minimum wages, .
. . and in an additional equal amount as liquidated damages."  The statute additionally provides that such
an action "may be maintained against any employer . . . by any one or more employees for and in behalf
of himself or themselves and other employees similarly situated." *Id.*

the matter to this Court on August 13, 2007. [Doc. 1]  Plaintiff was employed by defendants as a part-time retail sales consultant ("RSC") in Lafayette, Louisiana, from October 10, 2004 until September 30, 2005. [Doc.1-1]  In her petition, plaintiff asserts defendant's payment policy for part-time workers violated the minimum wage provisions of the FLSA, 29 U.S.C.A. § 206. Specifically, plaintiff alleges:

3.

Plaintiff was employed by Defendant in Lafayette Parish, Louisiana as a part time Retail Sales Consultant (RSC) from October 10, 2004 to September 30, 2005.

4.

Defendant defined a part time RSC as one who was regularly scheduled to work nineteen (19) hours per week, which Cingular called "regular hours".

5.

Defendant regularly scheduled Plaintiff and other similarly situated part time RSC employees to work more than nineteen hours per week.  Cingular classified work hours over nineteen in a work week for those employees as Exception Time.

6.

Defendant consistently failed to pay Plaintiff and other similarly situated employees any wages for scheduled Exception Time on the next regular paycheck, as required by 29 USCA § 206.

7.

Although Exception Time was entered on an employee time sheet in the scheduled hours section, Defendant's policy was to not pay any wages for Exception Time in the next pay check if the store manager failed to verify the hours worked in a separate time entry report.

8.

In such cases Defendants paid wages for only nineteen "regular hours" in the next pay check at the employee's regular rate.  The effect was to pay Plaintiff and other similarly situated employees a sub-minimum wage in the next check for all hours worked in each week an employee was scheduled to work more than thirty four hours.

9.

Defendants' practice violated 29 USCA § 206, which requires an employer to pay an employee in the next regular pay check for all hours worked in a workweek at a rate not less than the minimum wage. Where it is not possible to determine the actual time worked before the payroll entry deadline, the law requires payment for all scheduled hours at not less than minimum wage in the next check, and permits later adjustments for full wages at the employer's regular rate and for overtime.

[Doc. 1-1, pp. 1-2] Plaintiff asserts defendants are "liable to Plaintiff and similarly situated part time

Retail Sales Consultants for penalties and liquidated damages in an amount equal to and in addition

to the late paid minimum wages," and "for the plaintiffs' reasonable attorneys fees and expenses, pre

judgment and post judgment interest on the award, costs and for all other legal, or equitable relief

which this Court may deem appropriate." [Doc. 1-1, ¶11, p.4 (prayer for relief)]

In June, 2008, plaintiff moved this Court to provisionally certify a collective action,

consisting of two classes, as follows:

Class I            (Minimum Wage Violations)

All persons who were employed by Cingular as a part time Retail Sales Consultant at any time from and after April 23, 2004 and who were scheduled to work more than thirty-four (34) hours in any week.

Class II            (Record Keeping Violations)

All persons who were employed by Cingular as a part time Retail Sales Consultant at any time from and after April 23, 2004.

[Doc. 34-1, pp. 3-4][2]

---

[2]Thereafter, this matter was stayed by the Fifth Circuit, pending defendants' interlocutory appeal of this Court's Order denying a Motion to Dismiss previously filed by defendants. Upon review, the Fifth Circuit remanded the matter back to this Court to determine whether plaintiff had timely sought certification for a collective action. On remand, this Court determined plaintiff had timely sought certification. The Court and the parties then turned their attention back to the substance and scope of plaintiff's motion for certification.

In May, 2010, this Court denied certification of a class for record keeping violations, but provisionally certified an opt-in class action for  minimum wage violations, although narrower in scope than the class requested by plaintiff. [Doc. 88]   In that Ruling, this Court found as follows:

> [H]ere the defendant has a policy which not only allows, but compels deferral of payment for untimely submitted or approved timesheets, resulting in circumstances where the deferral can result in payments of less than ***minimum wage for the weeks worked*** (and indeed does appear to have resulted in payments of less than minimum wage to plaintiff on certain occasions).  The policy again, on its face, appears to be nationwide, and defendant has not asserted, in any fashion, that the foregoing procedure and policy was unique to this particular store. . . .
>
> . . . While it is true plaintiff has submitted no other affidavits to support her contention a provisional class is warranted, what she has shown is the existence of a nationwide written policy by her employer, which on its face permits (and appears to require by its very terms) late payment of wages in certain defined circumstances, which could  include late payment of mandatory minimum wages if the policy is applied as written.

[Doc. 67, pp. 16, 17 (emphasis in original, footnotes omitted)] Ultimately, this Court held as follows:

> Due to the foregoing, the Court finds plaintiff has presented sufficient information to include any employees in the conditional, provisional class who worked at the same location as plaintiff at the relevant times.  However, prior to sending notice to employees of any other store locations, the parties will be required to meet with the Magistrate Judge for a Rule 16 conference, for the purpose of developing an efficient and effective discovery plan, which is tailored to identify which, if any of defendant's other store locations might operate so as to create the proportion between "standard hours," the actual number of scheduled hours, and the wage rate, such that the result would be a violation of the FLSA.

[Id. at 18] A vigorous battle over the notice form to be sent to prospective class members then commenced, and notice did not issue until May, 2011.

In the interim, on April 19, 2011, plaintiff Sandoz filed a motion seeking leave "to provide notice of the action to all part time Retail Sales Consultants employed by Cingular during the period April 1, 2004 to January 1, 2006," arguing discovery revealed a nationwide class was warranted.

[Doc. 120, p.2 (emphasis added)] The motion was heard by the  Judge, who found as follows:

> The class presently conditionally certified by the District Judge is narrowly described to include the Ambassador Caffery store. Notice to persons beyond that location, absent an express ruling from the District Court expanding the class would be premature. Moreover, while discovery has shown there is a statistical possibility that FLSA violations could have occurred at other locations, Plaintiff has submitted no evidence the policy was actually applied as written at these locations.

[Doc. 128, p.6; *see also id.* at 5 ("that is, there is no evidence that any other store or region of stores actually rolled 'Exception Time' over to a subsequent pay period such that a minimum wage violation resulted.")] The magistrate judge additionally found plaintiff's evidence was "not sufficient to support a 'similarly situated' finding even as that term is generally defined under the lenient standard of the two-step approach of Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987)."[3] [Id. at 5] No appeal or objection was lodged to that ruling.

Finally, in May, 2011, notice issued to sixteen persons "who worked as part time retail sales consultant[s] at the Cingular retail store on Ambassador Caffery Parkway in Lafayette, Louisiana, at any time from April 1, 2004 to January 1, 2006." [Docs. 109-1, p. 2; 110; 132] Notices sent to five of those persons was returned as "undelivered." [Doc. 132] Four of defendants' former employees elected to opt in to the class. [Docs. 129-131, 133] However, plaintiff appears to concede that of those four, only three are sufficiently "similarly situated" to plaintiff Sandoz, for purposes of a

---

[3]Under the *Lusardi* approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir.2010) (citing *Mooney v. Aramco Services Co.*, 54 F.3d at 1213–14 (5th Cir. 1995)). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 & n. 8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. *Acevedo* at 519 (citing *Mooney* at 1214). Next, once discovery has largely been completed, and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action. *Id.*

collective action. [Doc. 183, pp. 5-6]

## II.  Applicable Law

"In 1938, Congress enacted the FLSA to eliminate the low wages and long working hours

then plaguing the American labor market." *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185,

1188 (5th Cir. 1979).  "Congress' declared purpose in enacting the Fair Labor Standards Act was to

correct 'conditions detrimental to the maintenance of the minimum standard of living necessary for

health, efficiency, and general well-being of workers.'"  *Brennan v. Veterans Cleaning Service, Inc.*,

482 F.2d 1362, 1368 (5th Cir. 1973)(quoting 29 U.S.C.A. § 202(a)).  The FLSA was designed to

ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work

and would be protected from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best*

*Freight System, Inc.*, 450 U.S. 728, 739 (internal citations and quotation marks omitted).  As

explained by the Supreme Court:

> The statute was a recognition of the fact that due to the unequal bargaining power as
> between employer and employee, certain segments of the population required federal
> compulsory legislation to prevent private contracts on their part which endangered
> national health and efficiency and as a result the free movement of goods in interstate
> commerce.  To accomplish this purpose standards of minimum wages and maximum
> hours were provided.

*Brooklyn Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945)(footnotes omitted); *see also Brennan* at 1369.

"FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the

purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*

at 740 (quoting *Brooklyn Bank* at 707).  Courts must be mindful of the directive that the FLSA is to

be "construed liberally to apply to the furthest reaches consistent with congressional direction."

*Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959); *see also McGavock v. City of*

*Water Valley, Miss.*, 452 F.3d 424 (5th Cir. 2006) (Courts must "construe the FLSA liberally in favor of employees").

The FLSA requires that an employer pay each employee a minimum wage set by the Act. 29 U.S.C. § 206.[4]   Section 206(b) mandates that "every employer shall pay" employees the minimum wage if "in any workweek [the employee] is engaged in commerce."  The FLSA's minimum wage provision speaks only of an *hourly* wage. 29 U.S.C. § 206(a) (West 2004, 2006) ("Every employer shall pay to each of his employees . . . not less than $5.15 an hour. . . ."); *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579 (1942), *superceded on other grounds by statute as stated in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, n. 22 (1985).  The Act does not "expressly provide[] for any unit of time over which the amount of compensation received can be averaged against the number of hours worked, in order to determine whether or not the average compensation per hour equals the minimum wage provided." *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985)(Ginsburg, J.) (quoting *Travis v. Ray*, 41 F.Supp. 6, 9 (D.C.Ky. 1941)); *see also Overnight Motor* at 579.  However, the vast majority of cases to have examined this issue have determined that the purpose of the minimum wage provisions is met by the "workweek standard," often referred to as the "Klinghoffer rule."

In *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2nd Cir. 1960), certain employees agreed to work an additional six hours per week for their employer but not be compensated for this work until some later date, due to financial difficulties their employer faced. *Id.* at 489-90.  The employer never provided the employees with compensation for the additional

---

[4]At all times pertinent to this litigation, minimum wage was set at $5.15 per hour. 29 U.S.C.A. § 206 (West 2004, 2006).

work, and the federal government eventually charged the company with violating the FLSA.  The

government argued the employer had violated the minimum wage provisions of the FLSA, because

the employees worked the additional six hours per week at the rate of $0.00 per hour.  *Id.* at 490.

The Second Circuit dismissed the government's minimum wage claim on the basis of a weekly

average wage theory.  *Id.* at 490; *see also Albanil v. Coast 2 Coast, Inc.*, 444 Fed.Appx. 788, *14,

n.16 (5th Cir. 2011).  The Second Circuit found "the Congressional purpose is accomplished so long

as the total weekly wage paid by an employer meets the minimum weekly requirements of the

statute, such minimum weekly requirement being equal to the number of hours actually worked that

week multiplied by the minimum hourly statutory requirement." *Id.*  Because the employees' weekly

wage, when divided by the number of hours worked, exceeded the minimum wage amount in effect

at that time, the Court found there was no violation of the minimum wage provisions of the FLSA.

*Id.*

Following the *Klinghoffer* decision in 1960, several other circuits adopted the Second

Circuit's approach.  *See Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir.

1969); *Dove v. Coupe*, 759 F.2d 167, 171-72 (D.C. Cir. 1985)(Ginsburg, J.); *Hensley v. MacMillan

Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *U.S. Dept. of Labor v. Cole Enterprises,

Inc.*, 62 F.3d 775, 780 (6th Cir. 1995); *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1237

(11th Cir. 2002).[5]  The Fifth Circuit has not directly addressed the applicable unit of time for

---

[5]This Court's research has revealed only two courts expressly adopting a different approach than
*Klinghoffer*.  In *Norceide v. Cambridge Health Alliance*, 814 F.Supp.2d 17 (D.Mass. 2011), after
conducting an examination of the statutory language, legislative history and applicable jurisprudence, the
court rejected the weekly wage theory in favor of the hour-by-hour method rejected by *Klinghoffer*.
There, certain hourly employees were routinely required to work before and after their scheduled shifts
and during their thirty minute meal breaks.  However, the employees"were routinely paid only for the
time worked during their pre-scheduled shifts - which allotted 30-minutes for an unpaid meal break -

measuring compliance with the FLSA's minimum wage provisions.[6]

The FLSA does not specify when an employee must receive minimum wages for the work he or she has performed.  Nevertheless, several courts have explicitly held, and other courts appear to have implicitly recognized, that the FLSA requires an employee to be paid the minimum wage for each hour worked during the pay period, on their regular payday. *Biggs v. Wilson*, 1 F.3d 1537, 1538,

---

rather [than] the actual time during which they performed compensable labor." *Id.* at 20.  The employer, relying upon the weekly wage theory, argued plaintiffs had no claim for minimum wage violations. *Id.* at 21-22.  Plaintiffs argued (and the court agreed) that they were actually being paid $0 per hour for the additional, uncompensated work, as their salary was intended to cover their scheduled shifts and nothing more. *Id.* at 22; *see also Schmitt v. State of Kan.*, 844 F.Supp. 1449, 1452, 1457-59 (D.Kan. 1994)(acknowledging but declining to follow the "general rule" that an employee cannot state a claim under the FLSA if his average wage exceeds the minimum wage, and instead adopting hour-by-hour compliance); *but see Dove*, 759 at 171-72 (finding the workweek standard satisfies the purpose of the FLSA's minimum wage provisions, but noting hour-by-hour compliance would not thwart Congress' purpose, and although "the minimum wage laws logically could be construed as requiring hour-by-hour compliance, both administrative and judicial decisions established the workweek as the measuring rod for compliance at a very early date"; *held* - "the magistrate erred in employing a period shorter than a workweek to measure compliance with minimum wage law.")

Although plaintiff argues this Court should apply the hour-by-hour standard, in this matter, the result would be the same regardless of which standard is employed.  Hour-by-hour compliance will only result in higher pay for an employee where the employee performs work for which he is uncompensated. In this matter, for purposes of the collective action, no allegations have been made that any of defendants' employees performed work for which they were *uncompensated*; rather, the allegations are solely that employees were not *timely* paid minimum wage for all hours worked.  Accordingly, under the facts asserted by the representative class, the result will be the same, regardless of whether the weekly wage theory or the hour-by-hour theory is employed.

[6]The only Fifth Circuit case tangentially addressing this issue that this Court and counsel have located is *Albanil v. Coast 2 Coast, Inc.*  In that case, the district court utilized the weekly wage theory from *Klinghoffer*.  The Fifth Circuit noted as follows:

> Defendants urged application of this [*Klinghoffer*] standard in the district court, and they do so on appeal.  The workers did not take issue with this standard in the district court or on appeal.  The Court therefore will determine whether the workers have presented sufficient evidence to create a material issue of fact under this standard.  *But see Norceide v. Cambridge Health Alliance*, 814 F.Supp.2d 17, 2011 WL 3895126 (D.Mass.2011)(rejecting application of the weekly average wage standard in favor of an hour-by-hour standard).

*Albanil*, 444 Fed.Appx. 788, 804-05, n.16 (5th Cir. 2011).

1539 (9th cir. 1993)("We . . . hold that under the FLSA wages are 'unpaid' unless they are paid on the employees' *regular payday*.")(emphasis added); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993)(employer's retention of "any part of the minimum wage past the end of the pay period violates the FLSA").

For example, in *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, *modified on other grounds*, 776 F.2d 265 (11th Cir. 1985), an automobile salesman filed suit against his employer, alleging he had not been compensated in accordance with the minimum wage requirements of the FLSA. *Id.* at 1571-72. The employer compensated its salesmen through cash bonuses and commissions. *Id.* at 1572. Salesmen received both weekly and monthly checks: each Thursday, salesmen were paid 70% of the total commissions earned the previous week; at the end of the month, salesmen were issued a settlement check consisting of the 30% that was withheld from each weekly check. *Id.* The practical effect of this plan was that wages paid for some months were in excess of the minimum wage, while in other months, wage payments fell below the minimum wage. *Id.* The question presented to the court was whether the "excess" payments or commissions (*i.e.* the amounts over and above minimum wage for all hours worked) could be "carried forward" to apply to those months where payments were below minimum wage. *Id.* at 1578.

The district court, relying on the Field Operations Handbook issued by the Department of Labor's Wage and Hour Division[7], held that "excess commissions could be carried forward and

---

[7]The Wage and Hour Division of the Department of Labor enforces federal minimum wage, overtime pay, recordkeeping, and child labor requirements of the FLSA. *See* www.dol.gov/whd/about/mission/whdmiss.htm (last visited March 11, 2013). The Field Operations Handbook "is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." www.dol.gov/whd/FOH/index.htm (last visited March 11, 2013).

applied to the minimum wage [deficiency] on the next settlement date." *Id.* at 1578 (emphasis

omitted).  The appellate court first noted the Handbook states, "'[t]he only requirement is that the

employee receive 'prompt payment' of the minimum wage covering all hours worked during the pay

period.'" *Olson* at 1578.  The Court then found as follows:

> We think the Act clearly requires an employee to be *paid* the minimum wage
> for each hour worked during the pay period. *See Mitchell v. Mitchell Truck Line, Inc.*,
> 280 F.2d 721, 741 (5th Cir.1961) (The Act requires an employer to pay minimum
> wages.). Although the provision cited by the district court allows excess commissions
> to be carried forward, the Handbook provision must be interpreted in light of the
> Act's history and purpose. One of the purposes of the Act was to ensure that
> employees would receive the minimum wage for each hour worked within a pay
> period. Thus, a fair interpretation of the Handbook provision is that excess
> commissions earned by salesmen during one pay period may be carried forward and
> applied to the minimum wage for the next period so long as the employee actually
> received the minimum wage for each hour worked **within each separate pay period**.
> This places a duty on the employer to ensure that the employee *receives* payment of
> the minimum wage. A mere alteration of the employer's records that reflects excess
> commissions earned in the preceding period being applied toward the minimum wage
> for the current period will not suffice. The employee must *actually receive* the
> minimum wage each pay period.

*Id.* at 1578-79 (italics in original; bold emphasis added; citations omitted); *see also Mitchell v.*

*Mitchell Truck Line, Inc.*, 286 F.2d 721, 725 (5th Cir. 1961)("[The employer] was required under the

Act to . . . pay minimum wages . . . .  It certainly did not . . . since there was substantial worktime

not compensated for as such. Nor was it shown by the employer to be within the statutory minimum

on the basis of wages actually paid."); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (Liquidated

damages provision of FLSA "constitutes a Congressional recognition that failure to pay the statutory

minimum **on time** may be so detrimental to maintenance of the minimum standard of living

'necessary for health, efficiency, and general well-being of workers' and to the free flow of

commerce, that double payment must be made in the event of delay in order to insure restoration of

the worker to that minimum standard of well-being")(emphasis added)(quoting 29 U.S.C.A. § 202(a)).

Finally, the great weight of authority supports the view that minimum wage compliance is determined on a workweek-by-workweek basis, rather than the pay period as a whole, even if the pay period is longer than one week.  For example, in *Luther v. Wilson*, 528 F.Supp. 1166 (S.D.Ohio 1981), plaintiff was paid on a commission basis, and there was no regular pattern of payment. In conducting its analysis, that court found as follows:

> In determining the plaintiff's minimum wage and overtime compensation claims, the first issue that must be resolved is what is the applicable period for which payments must equal the statutory requirements. Resolution of this issue is made exceedingly difficult by the sporadic nature of the commission payments plaintiff received and by conflicting statements, in both case law and administrative interpretations regarding the "work week standard" of the Act and the payroll period.

> On the one hand, the Wage and Hour Administrator has stated that "section 6(b) of the Act ... is applicable on a work week basis and requires payment of the prescribed minimum wages to each employee who 'in any work week' is employed in a covered enterprise." Wage Hour Opinion Letter No. 125 (August 14, 1962) (emphasis added). . . . Furthermore, the Wage Hour Administrator has indicated that "while the Act does not require that the employee's compensation must be paid weekly, it does require the employer to pay minimum wages due for the particular work week on the regular pay day for the period in which such work week ends." Opinion Letter No. 63 (November 30, 1961).

> The administrative confusion has carried over to the courts. . . . Analysis of numerous cases and administrative interpretations in regard to this issue reveals three separate principles at work. . . . The first of these principles is that work weeks may not be averaged to avoid the obligation to pay overtime compensation. Second, pay periods may not be averaged, as, for example, where an employee works 20 hours one week and 30 hours the next at a salary sufficient to cover 25 hours, in order to avoid paying minimum wage compensation in a longer than average week. Third, an employer and an employee are free to contract for any regular pay period.

*Luther* at 1173-74 (citations omitted); *see also Rogers v. Savings First Mortgage, LLC*, 362 F.Supp.2d 624, 629-634 (D.Md. 2005)(Where employer establishes a bi-monthly pay period, wages

paid on payday must be allocated to the workweeks within that pay period to determine compliance with minimum wage provisions, as the FLSA takes as its standard a single workweek); *Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 651 (N.D.Ill.,2007) (Minimum wage must be calculated on a workweek basis, even if the pay period is longer); 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the standard in determining the applicability of the Act"); 3C Fed. Jury Prac. & Instr. § 175.20 (5th ed.) ("The unit of measurement for determining compliance with the minimum wage requirement is the workweek, defined as 168 hours, or seven consecutive days. Each workweek is considered separately and a workweek in which an employee receives less than the minimum wage cannot be averaged with one in which the employee receives more than the statutory minimum"); *accord* 3C Fed. Jury Prac. & Instr. § 175.34 (5th ed.); 51B C.J.S. *Labor Relations* § 1330 (2013); U.S. Dep't of Labor, Opinion Letter FLSA 2008–5 (May 30, 2008), available at http://www.dol.gov/whd/opinion/flsa.htm (last visited February 26, 2013) ("the FLSA uses 'a single workweek as its standard and does not permit averaging of hours over 2 or more weeks.' Therefore, '[w]here the salary covers a period longer than a workweek, . . . it must be reduced to its workweek equivalent.'"); Craig Becker, *The Check Is In the Mail: Timely Payment Under the Fair Labor Standards Act*, 40 UCLA L. Rev. 1241, 1265-1266 (1993) ("In calculating the amounts that employers owe to employees, the FLSA does not allow employers to claim a credit for a given week's payments that exceed the minimum wage against another week's obligation to pay the minimum wage."); 1 *Guide to Employment Law and Regulations* § 12:2 (2012); 1 Les A. Schneider & J. Larry Stine, *Wage and Hour Law: Compliance and Practice*, § 8:3 (2012)("[A]n employer is prohibited from averaging earnings of hourly paid . . . employees . . . over a period longer than one

workweek.").[8]  Although Department of Labor regulations do not provide that minimum wage is to

be computed on a workweek basis, the Department of Labor has issued opinions adopting such a

standard. *See Dove* at 171-72 & n. 8 ("Not long after the federal minimum wage was first

established, the General Counsel of the Wage and Hour Division of the Department of Labor stated

that '[f]or enforcement purposes, the Wage and Hour Division is at present adopting the workweek

as the standard period of time over which wages may be averaged to determine whether the employer

has paid the equivalent of [the minimum wage].")[9]

    In light of the foregoing, this Court will use "the workweek as the measuring rod for

compliance" with the minimum wage provisions of the FLSA. *Dove*, at 171.

## III.   Motion to Decertify

    On August 22, 2012, defendants filed a "Motion to Decertify Conditional Class." [Doc. 158]

By way of their motion, defendants argue the "the purported plaintiffs who submitted opt-in forms

---

[8]The following cases additionally appear to support the view that minimum wage must be calculated on a workweek basis, even if the pay period covers a longer span of time; however, in each of the following cases, the employees appear to have actually been paid on a weekly basis: *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 301-303 (N.D.N.Y. 1978); *O'Brien v. Encotech Const.*, 2004 WL 609798, *6 (N.D.Ill.)(Court determined the workweek is the applicable standard for determining compliance with minimum wage provisions of the FLSA); *Birch v. Kim*, 977 F.Supp. 926, 930-31 (S.D.Ind. 1997); *Cuevas v. Monroe Street City Club, Inc.*, 752 F.Supp. 1405, 1416-17 (N.D.Ill. 1990). *See also Pruell v. Caritas Christi*, 2010 FWL 3789318 (D.Mass.)(adopting the workweek standard; no reference to length of pay period).

[9]This Court has located only one other case expressly adopting a different view. In *Marshall v. Allen-Russel Ford, Inc.*, 488 F.Supp. 615, 617-18 (E.D.Tenn. 1980), the Court found that where an employer establishes a pay period longer than one week (in *Marshall*, the pay period was monthly), as long as the total payment exceeds minimum wage for every hour worked during the entire pay period, without regard to wages earned during each week of that pay period, the employer has complied with the minimum wage provisions of the FLSA. *Marshall* at 617-18 ("The plaintiff's objections to averaging good sales weeks with bad sales weeks is valid only to the extent that separate pay periods cannot, under the law, be averaged together. However, as stated above, there is nothing in the law that says a pay period has to be one week only or that employees must be paid weekly. . . . Averaging good and bad weeks within the same pay period is unavoidable."). Neither party has advocated the position taken in *Marshall*. [*See e.g.* Doc. 158-1, p.17]

Page 14 of 26

(the 'Opt-In Plaintiffs') do not have viable, timely claims for violations of the minimum wage required by the Fair Labor Standards Act," and "because of the individualized nature of the inquiry required to make a determination as to their potential FLSA claims, and the defenses available to Defendants as to those claims, this matter is not amenable to treatment as a collective action." [Id. at 1]

The magistrate judge, in his Report and Recommendation, found as follows:

> In their memoranda, the parties agree that the Fifth Circuit has not yet defined a test for determining whether plaintiffs are sufficiently similarly situated to advance their claims together in a collective §216(b) action. However, as both parties have noted, this circuit has upheld decisions which adopted the "two step" inquiry described in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351(D.N.J.1987). *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). The two step approach contemplates a "conditional certification" of the class at the first stage based on limited information, and at the second stage, after appropriate discovery, evaluating whether the conditional class should be decertified based on the lack of "similarly situated" class members. *Lusardi*, at 358. . . .

**Are the opt-ins similarly situated to Sandoz?**

> Plaintiff asserts first that three of the four opt-ins are similarly situated to Sandoz in that they were part-time RSCs who were regularly paid for nineteen regular hours of work. . . .

> [T]he key dispute between the parties is whether actual and actionable minimum wage violations have been established for each/any. Without such a showing, the opt-ins cannot be considered similarly-situated to Sandoz.

> . . .

> Generally, to determine whether an individual has been paid the appropriate minimum wage, the amounts received by that person for a work week in a pay period is [sic] divided by the hours worked during the work week. This pay-divided-by-hours calculation is referred to as the 'Klinghoffer Rule'. . . . [T]he regulations adopted under the FLSA make clear that the workweek is the standard by which compliance is to be evaluated, and the Department of Labor has adopted the 'Klinghoffer Rule' in its opinion letters and in its Field Operations Handbook.

Page 15 of 26

. . . Cases applying the rule have recognized that although the calculation can result in variable rates of pay during work weeks, the relevant question is whether an individual receives in a work week an amount equal to or higher than the effective minimum wage for each hour worked. . . . In making the calculation, the 'total amount paid' properly includes both salary and commissions. *Klinghoffer*, 285 F.2d at 490; *Solis v. Tally Young Cosmetics, LLC*, No. 09-4804, 2011 WL 1240341(E.D.N.Y. Mar. 4, 2011); *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985). See also DOL Field Operations Handbook §30b02. Commission payments may be allocated across the weeks of the period of time in which they were earned. The regulations allow for the allocation of commissions equally when they cannot be specifically calculated by reference to the week in which they were actually earned. See 29 CFR §778.117-120.[10]

Unlike the situations in cases cited by Plaintiffs, there are no circumstances presented in the instant case where the claimants worked for nothing. The record demonstrates, and Plaintiffs do not seriously dispute, that the opt-in claimants were paid for every hour they worked and for every commission dollar they earned. That

---

[10]It must be noted that the regulations found at 29 C.F.R. §§ 778.117 - 778.122 solely address *overtime* compensation, *not minimum wage*. Specifically, that section of the Code addresses how to compute an employee's "regular rate" for overtime purposes, where the employee is paid by commission, rather than at a fixed rate. (Minimum wage has no bearing upon an employee's "regular rate" for overtime purposes.) As noted by one court, and equally applicable here:

The only regulations in this portion of the Code that could arguably apply here are §§ 778.119 ("Deferred commission payments—general rules") and 778.120 ("Deferred commission payments not identifiable as earned in particular workweeks"). The thrust of § 778.119 is that, in situations where the calculation and payment of the commission cannot be completed until after the regular pay day, the employer can disregard the commission in determining the regular pay rate until the amount of the commission can be ascertained. Once the amount can be ascertained, it must be "apportioned back over the workweeks of the period during which it was earned." Section 778.120 addresses the situation where "it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." In that instance, "some other reasonable and equitable method must be adopted." 29 C.F.R. § 778.120.

. . . .

. . . *Of additional note, regardless of any allocation principles that might be implicated, nothing in any of these regulations can be read to relieve Defendants of the obligation to pay no less than the minimum wage for each workweek within a pay period on that regular payday for that workweek.*

*Rogers v. Savings First Mortgage, LLC*, 362 F.Supp.2d 624, 632-633 (D.Md.,2005)(emphasis added).

fact cannot be ignored, since to do so would result in an overcompensation to each claimant for money already paid to them. Condensed to its essence, then, Plaintiffs claim not that they were in actuality underpaid, but only that on very few occasions cited, they were not paid timely, since time rolled over was not allocated to a specific work week, but was applied evenly across both weeks in a pay period, contrary to Wage and Hour regulations that specify that each workweek "stands alone." 29 CFR §778.104.[11]

. . . .

Both parties have referenced provisions of the Department of Labor Field Operations Handbook, which serves to guide DOL investigators in considering wage/hour compliance issues. FOH 30b04 provides that payment of both minimum wage and overtime compensation due an employee must ordinarily be made at the regular payday for the workweek or, when the pay period covers more than a single week, at the regular payday for the period in which the particular workweek ends. . . .

Likewise, FOH 30b05, which addresses minimum wage compliance for employees compensated wholly or in part on a commission basis, indicates that the determination of minimum wage/overtime compliance must be made on the facts of each case, using the general principles set out in 29 CFR §778.117-122.[12] Those

---

[11]The Court notes the United States Supreme Court has found that delayed payment of minimum wages is one of the ills Congress sought to remedy through the FLSA:

> [The liquidated damage provision of the FLSA] constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date. The same policy which forbids waiver of the statutory minimum as necessary to the free flow of commerce requires that reparations to restore damage done by such failure to pay on time must be made to accomplish Congressional purposes.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-709 (1945) (footnote omitted).

[12]As noted, *the cited regulations deal exclusively with overtime payments*. *See* note 10, *supra*. The Court additionally notes the cited portion of the FOH states, "If an employee paid wholly or in part on a commission basis is *subject to OT* [*i.e.* overtime], the principles set out in IB [*i.e.* Interpretive Bulletin] 778.117 - 778.122 shall be followed." http://www.dol.gov/whd/FOH/FOH_Ch.30.pdf (last visited March 8, 2013).  Again, plaintiffs have brought no claim for overtime compensation.

regulations specifically permit allocation of lump commission payments equally across the weeks of the period of time in which they were earned. They do not provide for a specific time over which commissions must be calculated and paid, and they contemplate that employers may establish periods of different lengths for such purposes. *See also Luther v. Wilson, Inc.*, 528 F.Supp. 1166, 1175 (S.D.Ohio 1981); *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985).

Further, FOH 30b07 provides as follows:

Crediting a bonus or other payments to a MW ["minimum wage"] deficiency.

. . . .

(b)     Situations may be encountered where the wages paid on the regular payday are not sufficient to satisfy the MW, but the employee at some subsequent date is paid additional wages (for example, a production bonus) for those w/w's ["workweek"] included in the bonus payment period. When the additional wages are added to the wages paid on the regular payday, the results are either that the employee has received not less than the MW for each hour worked during that week or that the amount of the MW deficiency has been reduced. In such situations, a monetary violation of the MW provisions exists since payment of not less than the MW required by FLSA must be made on the regular payday for each w/w (see FOH 30b04). However, **where the additional wages for a particular w/w have actually been paid prior to the investigation, and they are sufficient to bring the employee's wages up to the MW for each hour worked during that week, no MW violation shall be reported for that w/w.** If such additional wages paid prior to the investigation are not sufficient to bring the employee's earnings up to the MW for each hour worked during that week, the amount of the remaining MW deficiency shall be computed and reported. The employer shall be advised that no less than the MW must be paid on each regular payday and the employer's assurance of future compliance shall be obtained. [Emphasis added][13]

---

[13]Interpretations in agency manuals "do not warrant *Chevron*-style deference," as they are not subjected to the rigors of the Administrative Procedure Act; rather, such interpretations are "'entitled to respect' . . . but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 1662-63 (2000)(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140

Having studied the payroll data and calculations submitted by the parties, and applying the case-by-case standard described in the regulations and the Field Operations Handbook, this Court finds that the three opt-in claimants at issue (Pratt, Martin, and Savoie) were each paid amounts (including rollover and commission pay) which, when divided by hours worked, were equal to or exceeded the minimum wage rate. The records likewise indicate that payments, including commissions, were allocated to particular pay periods/work weeks to allow for that calculation, and the undersigned finds no regulatory authority which would prohibit that action. Since the record indicates that each of the opt-in claimants was compensated up to and beyond the minimum wage for each hour worked upon the payment of the allocated commissions, the purposes of the FLSA have been accomplished such that "no MW violation shall be reported" per FOH 30b07. If the Department of Labor would not find an actionable violation on these facts, neither will the undersigned.[14]

Having determined that no actionable minimum wage violations have been established for the three opt-in claimants Pratt, Martin and Savoie, this Court cannot conclude that the opt-ins are similarly-situated to the original plaintiff Sandoz, for whom actual violations were established, and must find that Plaintiffs have failed to establish that critical element in the *Lusardi* second-step analysis. Class decertification is warranted on that basis alone. Thus the court need not address the significant timeliness issues debated by the parties and whether equitable tolling should be applied "across the board" without regard to individualized inquiries which separately or in combination could preclude a collective action.

[Doc. 182, pp. 9-18 (footnotes omitted; emphasis in original)]

---

(1944)). Additionally, the forward to the handbook states, "It is not used as a device for establishing interpretative policy." FOH, Forward at 1, *available at* http://www.dol.gov/whd/FOH/index.htm (last visited March 8, 2013).

[14]It is of note FOH 30b07 does *not* indicate a violation has not occurred when workweek wages are insufficient but the violation has been rectified before the investigation; rather only that the **violation need not be reported**. Thus, the Court differs to some degree with the magistrate judge's reliance and the significance placed upon that portion of the regulations. It is, it would seem, significant that even the enforcing arm identified *a violation*, and uses a workweek approach, however, for whatever administrative reason, suggests a violation of a workweek wage which has been rectified prior to the investigation *need not be reported*. Hence, the language suggests first, that the workweek gauge is being used, and when wages are insufficient for a given workweek, a violation has occurred, however it need not be reported if rectified before the investigation begins. Again, the FOH is **not** controlling, however, neither is the language of the statute itself defining, nor does the jurisprudence interpreting the statute offer the clarity desired. Thus, both the magistrate judge and this Court must approach the question at issue with little, if any, true guidance.

To summarize, the magistrate judge found none of the opt-in plaintiffs to be similarly situated to Ms. Sandoz, because none had suffered a violation of the minimum wage provisions of the FLSA. The magistrate judge's recommendation rests upon the findings that, although plaintiffs were paid less than minimum wage for certain workweeks, plaintiffs were eventually paid the additional salary and commissions earned in those prior workweeks, and because Wage and Hour Division policy would *not require, under those circumstances, that a minimum wage violation be reported* (provided the employer had paid the employee all wages owed prior to the Wage and Hour Division's investigation), the magistrate judge opined no actionable violation has occurred.

This Court respectfully disagrees.  Although the magistrate judge's interpretation is likely a far more practical and efficient one likely heralding the administrative position reflected in FOH 30b07, this Court finds the stronger *legal* argument to be that a violation has, in fact occurred, and the fact it need not be *reported* if corrected before an investigation ensues does not obviate the existence of the violation.  The suggestion a violation need not be reported if rectified before an investigation begins does not, however, mean there has been no violation as a matter of law.  The cited FOH 30b07 deals with *reporting requirements* **for a violation**, not whether a violation has occurred for purposes of interpreting a legal question as to the law at issue.

In this matter, a cursory examination of the payment records submitted to the Court by defendant reveals the following: defendant identifies the pay period covering June 5, 2005 through June 18, 2005 as "Pay Period No. 1." [Doc. 159, p.1]  For the second workweek within that pay period, opt-in plaintiff, Gregory Pratt, worked 40 "regular hours" and 9.63 hours of overtime.[15]

---

[15]Again, plaintiff's have made no claim for violation of the overtime provisions of the FLSA. Nonetheless, defendants are still obligated to pay at least the minimum wage for all hours worked during a pay period.  As such, this Court has examined the wages received *only* for compliance with the

Accordingly, Mr. Pratt worked at total of 49.63 hours during the second workweek of that pay period.  Mr. Pratt was paid for Pay Period no. 1 on June 24, 2005.  In that paycheck, for the second workweek, Mr. Pratt was paid for only 19 regular hours, at a total of $172.14.[16]  However, he should have been paid $255.59 (49.63 hours × $5.15 = $255.59).  On July 29, 2005 (more than one month after pay day for pay period no. 1), Mr. Pratt received a commission check.  Defendant identifies $62.50 of that commission check as commission payments for workweek no.2, in pay period no. 1. Even were this Court to agree with the magistrate judge and defendants that this subsequent payment of commissions could cure defendants' obligation to pay Mr. Pratt minimum wage for all hours worked on his regular payday, the commission payment was insufficient to bring Mr. Pratt's wages up to minimum wage, as there would still be a deficiency of $20.95.   Accordingly, defendants are in violation of the minimum wage provisions of the FLSA.

Defendant identifies the pay period covering July 3, 2005 through July 16, 2005 as "Pay Period No. 3." [Id. at p.1]  For the first workweek within that pay period, Mr. Pratt worked 34.25 "regular hours."  Mr. Pratt was paid for Pay Period no. 3 on July 22, 2005.  In that paycheck, Mr. Pratt was paid for only 19 hours, at a total of $172.14.[17]  However, to comply with the minimum wage provisions of the Act, Mr. Pratt should have been paid $176.39 (34.25 hours × $5.15 = $176.39).  On August 26, 2005 (more than one month after pay day for pay period no. 3), Mr. Pratt received a commission check, of which defendants designate $71.08 as commission payments for

_____

minimum wage provisions.

[16]Plaintiff was paid the remainder of his wages for that workweek in his next paycheck, two weeks later. [Doc. 159, p.1]

[17]Plaintiff was paid the remainder of his wages for that workweek in his next paycheck, two weeks later. [Doc. 159, p.1]

workweek no.1, in pay period no. 3.[18]  According to defendants and the magistrate judge, this subsequent payment of commissions would be sufficient to bring defendants into compliance with the minimum wage provisions of the FLSA; this Court disagrees.  Perhaps the violation might not be required to be reported, pursuant to FOH 30b07, however that does not necessitate a finding that no violation occurred.

Again, in order to comply with the minimum wage provisions of the Act, an employee must *receive* minimum wage, within the pay period,  for all hours worked, arguably, upon a workweek standard.  While it is true the regulations relied upon by defendants and the magistrate judge do address situations where the calculation and payment of commissions cannot be completed until after the regular payday, those particular regulations are concerned *solely* with the calculation of an employee's "regular rate" *for overtime purposes* - an inquiry which has little to no bearing upon base *minimum wage determinations* - and "nothing in any of these regulations can be read to relieve Defendants of the obligation to pay no less than the minimum wage for each workweek within a pay period on that regular payday for that workweek."  *Rogers* at 633.  And while defendants did eventually pay plaintiffs the remainder of wages and commissions owed, those payments were not *received* by the employee until well *after the payday* upon which they were due.[19]  As previously noted, the Eleventh Circuit has found "that excess commissions earned by salesmen during one pay

---

[18]This Court has examined only the first 20 of the 122 pages of payment data submitted by defendants.  Within those first 20 pages (which address a total of 33 pay periods), the Court found 12 violations of the minimum wage provisions. [*see* Doc. 159, Pay Period ("PP") No. 1, p. 1; PP No. 3, p. 3; PP No.7, p. 5; PP No. 2, p.7; PP No. 5, p. 9; PP No. 12, p. 12; PP No. 13, p. 13; PP No. 17, p. 15; PP No. 2, p. 17; PP No. 3, p. 18; PP No. 4, p. 19; PP No. 5, p. 19]

[19]Defendants' pattern appears to have been to pay remaining wages owed in the next paycheck, and to pay commissions at an even later date. [*See* Doc. 159, pp. 1-6 (commissions paid three to seven weeks after they were earned)]

period may be carried forward and applied to minimum wage *for the next period so long as the employee actually received the minimum wage for each hour worked within each separate pay period.*" *Olson* at 1579(emphasis added).  However, the foregoing jurisprudential rule, also, is of no benefit to defendants in this matter, because not only did the employee *not* receive minimum wage for each hour worked *within each pay period*, but in each of the twelve violations this Court has examined (*see* n. 18, *supra*), the commission payments were not received until *after* the subsequent pay period.[20]  Accordingly, the Court finds the three opt-in claimants - namely, Gregory L. Pratt, Ebony M. Plumbar, and Andre Savoie - are similarly situated to plaintiff Sandoz, in that each suffered actionable minimum wage violations due to defendants' late payment of wages and commissions, such that class decertification on that basis is not warranted.

This Court REMANDS to the magistrate judge for consideration of defendants' statute of limitations defense, as that issue was not addressed in light of the magistrate judge's recommendation that decertification was warranted.[21]

## IV.    Motion for Expansion of the Minimum Wage Class

On August 1, 2012, the conditional class of plaintiffs filed a "Motion for Expansion of the Minimum Wage Class," seeking "an order provisionally certifying an expanded Minimum Wage class for notice purposes (Minimum Wage Class 2), to include all part time Retail Sales Consultants who worked in any Cingular Retail Store during the relevant time period." [Doc. 153, p. 15] The

---

[20]On average, the commission payments examined by this Court were received two pay periods after the pay period in which they were earned. [Doc. 153, pp. 1-20]

[21]Because the magistrate judge found class decertification to be warranted, he concluded he "need not address the significant timeliness issues debated by the parties and whether equitable tolling should be applied 'across the board' without regard to individualized inquiries which separately or in combination could preclude a collective action." [Doc. 182, p. 18]

magistrate judge, in his Report and Recommendation, found as follows:

> In the current motion, Plaintiffs urge that since the previous ruling, evidence provided by Cingular as to the work hours and wages for the four opt-in plaintiffs demonstrates that the "rolling over Exception Time was a routine and regular occurrence, and resulted in actual minimum wage violations for all of the part time RSC's who have opted into this action." [Rec. Doc. 153, p. 7] On that basis, Plaintiffs assert that they have demonstrated more than a mere potential for minimum wage violations, warranting expansion of the minimum wage class for notice purposes beyond the Lafayette Ambassador Caffery store location, to include all Cingular Retail Stores nationwide during the relevant time period.

> . . . .

> When the effort to expand the class was last before the undersigned, this Court found there was no basis for nationwide expansion/notice as there was no evidence that had been discovered to warrant such expansion. Sandoz had failed to establish a "similarly situated" finding as to other markets, providing instead only a "statistical possibility" of minimum wage violations in other markets. [Rec. Doc. 128, pp. 5-6] That is still the case as no evidence has been put forward to suggest that as to other markets of Cingular, there remains anything other than a *potential* or *statistical possibility* for minimum wage violation, already found by the undersigned to be insufficient. [Rec. Doc. 128]

> Therefore, for the reasons articulated above, it is recommended that Plaintiffs' Motion for Expansion of the Minimum Wage Class [Rec. Doc. 153] be DENIED.

[Doc. 182, pp. 5-6(emphasis in original)]

As this Court has previously found in this matter:

> [H]ere the defendant has a policy which not only allows, but compels deferral of payment for untimely submitted or approved timesheets, resulting in circumstances where the deferral can result in payments of less than ***minimum wage for the weeks worked*** (and indeed does appear to have resulted in payments of less than minimum wage to plaintiff on certain occasions).  The policy again, on its face, appears to be nationwide, and defendant has not asserted, in any fashion, that the foregoing procedure and policy was unique to this particular store.

[Doc. 87, p.16 (emphasis in original; footnotes omitted)] The foregoing statements still ring true:

defendant still does not contest that the policy at issue was nationwide and not limited to its

Ambassador Caffery location, and plaintiff has now submitted evidence that the foregoing policy was applied to other persons employed by defendant at the Ambassador Caffery location, resulting in violations of the minimum wage provisions of the FLSA. Accordingly, at this time it would seem to be incumbent upon defendant to show the nationwide policy is *not*, in fact, actually employed at other locations, or that the nationwide policy as applied, in fact, does not result in minimum wage workweek violations as outlined by this Court. Indeed, the Magistrate Judge, as a practical matter, may be correct that nationwide notice would not reveal any other minimum wage violations; however, if a company has a nationwide policy in place, and application of that policy has been shown to have resulted in actual minimum wage violations in certain instances, this Court believes plaintiff should have opportunity to determine whether additional violations may have occurred at defendant's other locations by way of application of the identified nationwide policy. Because the evidence before this Court is that defendant's policy was a nationwide policy, and as plaintiff has shown application of that policy resulted in minimum wage violations to at least three of the eleven persons who received notice of this suit, the Court finds plaintiff has met her burden to show "an order [is warranted] provisionally certifying an expanded Minimum Wage class for notice purposes . . ., to include all part time Retail Sales Consultants who worked in any Cingular Retail Store during the relevant time period." [Doc. 153, p.15] However, in an effort to proceed in the most cost-efficient manner, the Court finds notice should not and shall not issue until or unless a final determination were to be found, in plaintiff's favor, as to the statute of limitations issue.

## V.    Conclusion

In light of the foregoing, the Motion to Decertify Conditional Class [Doc. 158] is REMANDED to the magistrate judge for consideration of defendant's statute of limitations defense;

the Motion for Expansion of the Minimum Wage Class [Doc. 153] is GRANTED; however,

execution of the Court's order allowing for expanded notice is DEFERRED until such time as the

statute of limitations issue might be resolved in plaintiff's favor.[22]

THUS DONE AND SIGNED in Chambers, this ___27th___ date of March, 2013.

COPY SENT
DATE 3-28-13
BY: CB
TO: RJH/PJ

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[22]Of course, if the statute of limitations issue were to be resolved in defendant's favor, the
motion to expand notice would be denied as moot.

Page 26 of  26